RECOMMENDED FOR PARTIAL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0388P (6th Cir.)
File Name: 00a0388p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

    *v.*

HARVEY E. PAGE (99-5361);
THOMAS ANDRE POWERS
(99-5449); KEITH LINTON
(99-5451); DAVID SHAWN
HILL (99-5456),
    *Defendants-Appellants.*

Nos. 99-5361/
5449/5451/5456

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 98-00006—Thomas G. Hull, District Judge.

Argued and Submitted: August 1, 2000

Decided and Filed: November 9, 2000

Before: KENNEDY and NORRIS, Circuit Judges; KATZ,
District Judge.[*]

———————————

[*]The Honorable David A. Katz, United States District Judge for the
Northern District of Ohio, sitting by designation.

_____

**COUNSEL**

**ARGUED:** C. Todd Chapman, KING & KING, Greeneville, Tennessee, for Appellant. David P. Folmar, Jr., ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Denise T. Stapleton, TERRY, TERRY AND STAPLETON, Morristown, Tennessee, William L. Ricker, RICKER LAW OFFICE, Greeneville, Tennessee, C. Todd Chapman, KING & KING, Greeneville, Tennessee, R. B. Baird III, LAW OFFICES OF R.B. BAIRD III, Rogersville, Tennessee, for Appellants. Dan R. Smith, ASSISTANT UNITED STATES ATTORNEY, Johnson City, Tennessee, for Appellee.

_____

**OPINION**

_____

KATZ, District Judge. Defendants were charged with conspiracy to distribute and to possess with the intent to distribute cocaine base (crack). In addition, defendants Powers, Linton, and Hill were charged in substantive counts with distribution of cocaine base. They were each convicted on all counts with which they were charged. They raise numerous issues on appeal, most of which do not merit publication under Rule 206(a) of the Sixth Circuit Court of Appeals. In this opinion, we address only the following issues: (1) whether the district court erred when it declined to suppress statements and dismiss the indictment based upon alleged violations of the consular notification provisions of the Vienna Convention; (2) where a defendant is convicted of conspiracy to distribute, whether the defendant's drug purchases for personal use are relevant in determining the quantity of drugs that the defendant knew were distributed by the conspiracy; and (3) whether defendants' sentences are improper in light of *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000). All other issues raised by defendants are addressed

relevance to our disposition than the dismissal of the remaining counts.

*Apprendi*, 120 S. Ct. at 2354. However, the decision in *Apprendi* was not limited by the standard of review for plain error. On review for plain error, we must determine whether the sentencing error prejudiced defendants and whether it seriously affects the fairness, integrity, or public reputation of the district court proceedings. In the case of defendants Linton, Hill, and Powers, we find that they were not prejudiced and that the fairness of the proceedings was not affected by the error since, absent the error, their sentences would have been the same as those which were imposed. We therefore decline to exercise our discretion as to these three defendants because they can show no meaningful benefit they would receive from vacating their sentences and remanding for resentencing.

Defendant Page, on the other hand, was convicted of only the conspiracy count. He was sentenced to a term of thirty years imprisonment for this offense, ten years more than the prescribed statutory maximum. We find that Page's substantial rights were affected and the fairness of the proceedings was undermined since the error clearly affected the outcome of the case by substantially increasing his sentence. We therefore exercise our discretion to notice the plain sentencing error and vacate Page's sentence.

**CONCLUSION**

For the reasons stated herein and in the unpublished appendix to this opinion, we affirm defendants' convictions and affirm the sentences of Linton, Hill, and Powers. However, we vacate Page's sentence and remand for resentencing.

Sentencing Guidelines would require that the sentence imposed on one or more of the substantive counts run consecutive to the sentence on the conspiracy count, to the extent necessary to produce a combined sentence equal to the total punishment. *See* U.S.S.G. § 5G1.2(d); *see also* U.S.S.G. § 3D1.2 and 3D1.3 (setting forth procedures for grouping counts and determining the offense level applicable for each group). Thus, the government argues that the defendants cannot show that the sentencing errors affected their substantial rights or seriously affected the fairness of the judicial proceedings.[4]

At first blush, *Apprendi* appears to foreclose this argument. In rejecting a similar argument, the Court stated:

> [T]he State has argued that even without the trial judge's finding of racial bias, the judge could have imposed consecutive sentences on counts 3 and 18 that would have produced the 12-year term of imprisonment that Apprendi received; Apprendi's actual sentence was thus within the range authorized by statute for the three offenses to which he pleaded guilty. . . . The constitutional question, however, is whether the 12-year sentence imposed on count 18 was permissible, given that it was above the 10-year maximum for the offense charged in that count. The finding is legally significant because it increased–indeed, it doubled–the maximum range within which the judge could exercise his discretion, converting what otherwise was a maximum 10-year sentence on that count into a minimum sentence. The sentences on counts 3 and 22 have no more

---

[4] The government also argues that the failure to submit the issue of drug quantities to the jury as an element of the offense is harmless error. However, this argument addresses a challenge to defendants' convictions which has not been made. Defendants challenge only their sentence under *Apprendi.* The offense alleged in the indictment and reflected in the jury verdict did not require proof of a specific quantity of drugs.

---

and decided in an unpublished appendix to this opinion. For the following reasons and the reasons stated in the unpublished appendix, we affirm the convictions of defendants and affirm the sentences of defendants Linton, Hill, and Powers. However, we vacate defendant Page's sentence and remand for resentencing.

### FACTS AND PROCEDURAL HISTORY

This case involves a conspiracy to distribute cocaine base which spanned a period from May, 1996, until approximately August 15, 1997. According to count one of the indictment, defendants Keith Linton, David Hill, Thomas Powers, and others would transport crack and powder cocaine from Florida to Tennessee. Linton and Hill would then cause the powder cocaine to be transformed into crack and would distribute the crack to Powers, Harvey Page, and other indicted and unindicted individuals in order to facilitate further sales in Tennessee and elsewhere. The remaining counts of the indictment relate to specific transactions occurring in furtherance of the conspiracy.

Linton is a citizen of Barbados. He gave statements to law enforcement officers on two separate occasions. The first occurred on May 9, 1996, after his arrest by the Carter County, Tennessee Sheriff's Department. Linton gave a second statement in October, 1997, during a meeting with Agent Dennis Higgins who was assigned to the Drug Enforcement Agency (DEA) Task Force. In that statement, Linton admitted his involvement in the charged conspiracy. Before each statement, Linton was informed of his *Miranda* rights; however, he was not informed of a right under Article 36 of the Vienna Convention to contact the Barbados consulate. Prior to trial, Linton filed a motion to suppress the statement he had given to Agent Higgins and a motion to dismiss the indictment on the ground that the government failed to comply with the provisions of the Vienna

Convention.[1] After a hearing on the motions, the magistrate judge recommended denying the motions. First, the magistrate judge found that the treaty confers no private right of enforcement upon individuals. Second, he found that a violation of the treaty does not rise to constitutional dimensions. On July 31, 1998, the district court issued an order adopting and approving the report and recommendation as to both motions. Linton's written statement was read to the jury at trial and was introduced as an exhibit. Linton, Hill, Powers, and Page were each found guilty of conspiracy to distribute crack cocaine and of each of the substantive counts with which they were charged. Linton argues that the district court erred in failing to sanction the government for not complying with the provisions of the Vienna Convention by granting his motion to dismiss and/or motion to suppress.

At sentencing, the district court calculated the amount of drugs attributable to each defendant over the course of the conspiracy. The court found that more than 1.5 kilograms of crack cocaine were attributable to Linton, Hill, and Page. The court determined that the amount attributable to Powers over the course of the conspiracy was at least 500 grams but less than 1.5 kilograms of crack cocaine. In its calculation, the court did not reduce the total amount of drugs attributed to him by the amount Powers consumed for his personal use. The district court then imposed the following sentences: Powers – 292 months imprisonment; Linton – 360 months

---

[1]Linton also argued in the district court that his statement should be suppressed because he was coerced into making it. Although he executed waivers of his right to remain silent and to consult with an attorney before and during questioning, he testified at the hearing that he did not read the waiver because he did not have his glasses. However, on cross-examination he acknowledged that the waiver was read to him. The magistrate judge found that there was no evidence presented to indicate that he did not understand the import of the waivers which he signed or that he was coerced into signing them. The district court adopted the magistrate judges report and recommendation to deny the motion to suppress on this basis. Linton has not raised the *Miranda* issue on appeal.

1136. We have already determined that, under *Apprendi*, the district court clearly erred in sentencing the defendants as to the conspiracy charge in count one to a term of imprisonment greater than the maximum sentence permitted under § 841(b)(1)(C). An error affects substantial rights when the error was prejudicial, that is, when it "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). There is no doubt that imposing additional years of imprisonment beyond that authorized by a jury's verdict affects a defendant's substantial rights. *See United States v. Barajas-Nunez*, 91 F.3d 826, 833 (6th Cir. 1996) (an error affects substantial rights when the error results in a sentence substantially different than that which would have been imposed absent the error). Furthermore, a sentencing error seriously affects the fairness, integrity, or public reputation of judicial proceedings when a court's error results in imposition of a sentence which is not authorized by law. *See United States v. Williamson*, 183 F.3d 458, 464 (5th Cir. 1999).

Nevertheless, the government contends that the sentencing errors, at least with respect to Linton, Hill, and Powers, were not prejudicial and, therefore, should not be noticed on plain error review. These defendants were convicted not only of conspiracy, but also of one or more counts of distribution and/or possession with intent to distribute crack cocaine, each of which carries a statutory maximum of twenty years pursuant to 21 U.S.C. § 841(b)(1)(C). Thus, the total statutory maximum is dramatically increased depending on the number of counts of which each defendant was convicted.[3] The government argues that there would be no change in defendants' sentences if remanded for resentencing. Rather than running the sentences concurrently, the

---

[3]In addition to the conspiracy charge, Linton was convicted of an additional six counts of distribution of crack cocaine. Hill was convicted of one additional count and Powers of two additional counts of distribution of crack cocaine. Page was convicted of only the conspiracy charge.

and the jury made no findings regarding quantity. Pursuant to the provisions of § 841, the quantity of drugs is a factual determination that significantly impacts the sentence imposed. Section 841(b)(1)(C) provides for a maximum penalty of 20 years unless the crime involves a quantity of drugs as set forth in subsections (A) or (B). Those subsections provide for a maximum penalty of 40 years if the crime involved 5 grams or more of crack cocaine, *see* § 841(b)(1)(B), and a maximum penalty of life imprisonment if the crime involved 50 grams or more of crack cocaine, *see* § 841(b)(1)(A). The district judge found, by a preponderance of the evidence, the quantity of drugs for which each defendant was accountable. Based on this drug quantity determination, each defendant was sentenced to a term of imprisonment exceeding the 20 year maximum set forth in § 841(b)(1)(C). However, as instructed in *Apprendi,* a defendant may not be exposed to a greater punishment than that authorized by the jury's guilty verdict. The jury merely found that defendants conspired to distribute and possess to distribute some undetermined amount of crack cocaine. As such, defendants cannot be subjected to the higher penalties under § 841(b)(1)(A) or (B). Rather, the maximum sentence that may be imposed on this count is 20 years pursuant to § 841(b)(1)(C).

Defendants, however, failed to object to the district judge making the determination of drug quantities. Where there has been no objection, review is for plain error. Fed. R. Crim. P. 52(b). We cannot correct an error pursuant to Rule 52(b) unless there is an "error" that is "plain" or "clear" under current law and that affects substantial rights. *Johnson v. United States*, 520 U.S. 461, 466-67 (1997); *United States v. Calloway*, 116 F.3d 1129, 1136 (6th Cir. 1997). If these conditions are met, we may exercise discretion and notice the error only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467.

"'Current law,' for purposes of plain error review, is the law as it exists at the time of review". *Calloway*, 116 F.3d at

imprisonment; Hill – 360 months imprisonment; and Page – 360 months imprisonment.

Powers contends that the district court erred in including personal use drug quantities in its calculation for sentencing purposes. In addition, defendants challenge their sentences as improper in light of *Apprendi v. New Jersey*.

### ANALYSIS

### 1. The Vienna Convention

Article 36(1)(b) of the Vienna Convention provides as follows:

> 1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:
>
> . . . .
>
> (b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph[.]

Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261 (ratified November 24, 1969). Linton argues that his statement to Agent Higgins should have been suppressed and/or the indictment dismissed due to the government's failure to comply with the provision of Article 36 requiring government officials to inform him of his right to contact his consulate. As this issue presents a question of law as to the proper interpretation of the treaty, we review the

district court's conclusions *de novo*. *United States v. Morgan*, 216 F.3d 557, 561 (6th Cir. 2000).

As a general rule, international treaties do not create rights that are privately enforceable in federal courts. *See United States v. Li*, 206 F.3d 56, 60 (1st Cir. 2000); *Matta-Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir. 1990). The Supreme Court, however, has left this issue open as it relates to Article 36(1)(b), stating that its provisions "arguably" create individual rights. *Breard v. Greene*, 523 U.S. 371, 376 (1998). We need not decide this issue definitively since we join our colleagues in the First, Ninth, and Eleventh Circuits in concluding that although some judicial remedies may exist, there is no right in a criminal prosecution to have evidence excluded or an indictment dismissed due to a violation of Article 36. *See United States v. Li*, 206 F.3d 56 (1st Cir. 2000); *United States v. Lombera-Camorlinga*, 206 F.3d 882 (9th Cir. 2000); *United States v. Cordoba-Mosquera*, 212 F.3d 1194 (11th Cir. 2000).

As Linton contends, a treaty must be regarded as equivalent to an act of the legislature. *See Breard*, 523 U.S. at 378. Thus, as in the case of a statutory violation, the exclusionary rule is an inappropriate sanction, absent any underlying constitutional violations or rights, unless the treaty expressly provides for that remedy. *United States v. Giordano*, 416 U.S. 505, 524 (1974) ("The issue does not turn on the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights, but on the provisions of [the statute]."); *United States v. Ware*, 161 F.3d 414, 424 (6th Cir. 1998). The exclusionary rule "'was not fashioned to vindicate a broad, general right to be free of agency action not 'authorized' by law, but rather to protect specific, constitutionally protected rights.'" *Id.* (citing *United States v. Hensel*, 699 F.2d 18, 29 (1st Cir. 1983)). "The exclusionary 'rule has primarily rested on the judgment that the importance of deterring police conduct that may invade the constitutional rights of individuals throughout the community outweighs the importance of securing the conviction of the specific

expressed in *Jones v. United States*, 526 U.S. 227 (1999): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362-63. The Court explained that it does not matter that a particular fact is designated as a "sentencing factor." Rather, "the relevant inquiry is one not of form, but of effect– does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* at 2365.

In *United States v. Rebmann,* 226 F.3d 521 (6th Cir. 2000), this Circuit applied *Apprendi* in a case where the defendant pled guilty to distribution of heroin in violation of 21 U.S.C. § 841. Pursuant to her plea, Rebmann was exposed to a maximum term of imprisonment of twenty years. However, the drug distribution statute provides for a factual determination to be made as to whether the distribution of drugs caused death or serious bodily injury which, if so found, increases the maximum penalty from twenty years to life imprisonment. 21 U.S.C. § 841(b)(1)(A). The district court found, by a preponderance of the evidence, that a death resulted from Rebmann's distribution of drugs and sentenced her to a term of 292 months. A panel of this Court explained that, in light of *Apprendi*, "[o]ur duty . . . is to examine whether the sentencing factor in this case was a factual determination, and whether that determination increased the maximum penalty for the crime charged in the indictment." Finding that the issue of whether the distribution of drugs caused death or serious bodily injury was a factual determination that increased the maximum penalty to which Rebmann was exposed, the Court reversed Rebmann's sentence and remanded the case to the district court.

The Court finds the principles set forth in *Apprendi* applicable to defendants' cases. In count one of the indictment, defendants were charged with conspiracy to distribute and possess with the intent to distribute crack cocaine. There is no mention of quantity in the indictment

make one a member of a conspiracy to distribute. The situation is quite different where, as here, the evidence shows that there was a conspiracy and that a defendant was a member. At that point, the defendant's purchases for personal use are relevant in determining the quantity of drugs that the defendant knew were distributed by the conspiracy.

*Innamorati*, 996 F.2d at 492; *accord United States v. Antonietti*, 86 F.3d 206 (11th Cir. 1996); *United States v. Fregoso,* 60 F.3d 1314 (8th Cir. 1995); *United States v. Snook*, 60 F.3d 394 (7th Cir. 1995). We agree with the reasoning in *Innamorati* and hold that the drugs obtained by defendant from his supplier for his personal use were properly included by the district court in determining the quantity of drugs that the defendant knew were distributed by the conspiracy.

## 3. Defendants' Sentences in light of *Apprendi v. New Jersey*

In *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000), decided while the instant appeal was pending, the Supreme Court addressed the question of "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." *Apprendi*, 120 S. Ct. at 2351. Apprendi had been convicted in state court of possession of a firearm for an unlawful purpose, an offense punishable by imprisonment for between five to ten years. *Id.* at 2352. However, at sentencing, the district judge found, by a preponderance of the evidence, that Apprendi had committed the crime with a purpose to intimidate individuals because of their race. This finding served to increase Apprendi's sentence under New Jersey's hate crime law to imprisonment for between ten and twenty years. *Id.* The Supreme Court reexamined its prior decisions in this area and confirmed as a rule of Constitutional law the principle first

defendant on trial.'" *Id.* at 425 (citing *United States v. Caceres*, 440 U.S. 741, 754 (1979)).

Upon examination of the express provisions of the treaty, it is clear that nothing in the text requires suppression of evidence or dismissal of the indictment for violations of Article 36. *See Li*, 206 F.3d at 62. Because by its terms the Vienna Convention does not require application of the exclusionary rule or the more drastic remedy of dismissal of the indictment, we cannot impose such judicially created remedies absent a violation of a constitutional right. As noted in the *en banc* decision by the Ninth Circuit in *United States v. Lombera-Camorlinga*, "while the rights to counsel and against self-incrimination are secured under the Fifth and Sixth Amendments to our own Constitution and are essential to our criminal justice system, they are by no means universally recognized or enforced." *Lombera-Camorlinga*, 206 F.3d at 886. It further noted that "the treaty does not link the required consular notification in any way to the commencement of police interrogation. Nor does the treaty, as *Miranda* does, require law enforcement officials to cease interrogation once the arrestee invokes his right." *Id.* The Ninth Circuit concluded, and we agree, there is no indication that the drafters of the Vienna Convention had these "uniquely American rights in mind, especially given the fact that even the United States Supreme Court did not require Fifth and Sixth Amendment post-arrest warnings until it decided *Miranda* in 1966, three years after the treaty was drafted." *Id.* We find that the rights, if any, created by the Vienna Convention do not rise to the level of a constitutional right protected by the judicially created remedies sought by Linton.

The State Department's interpretation of the Vienna Convention also impacts our analysis. "[W]hile courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight." *Wickes v. Olympic Airways*, 745 F.2d 363, 365 (6th Cir. 1984) (citing

*Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961)). In the opinion of the State Department, "[t]he only remedies for failures of consular notification under the [Vienna Convention] are diplomatic, political, or exist between states under international law." *Li,* 206 F.3d at 63. Furthermore, "no other signatories to the Vienna Convention have permitted suppression under similar circumstances, and . . . two (Italy and Australia) have specifically rejected it." *Lombera-Camorlinga*, 206 F.3d at 888. Thus, our conclusion that the drastic remedies of suppression of evidence and dismissal of the indictment are not available under the Vienna Convention promotes harmony in the interpretation of an international agreement. *Id.* (citing Restatement (Third) of Foreign Relations § 325 cmt. d). Accordingly, the district court's denials of Linton's motion to suppress and motion to dismiss the indictment are affirmed.

**2. Drugs Used for Personal Consumption**

Defendant-appellant Powers challenges his sentence, arguing that the district court erred in failing to exclude from its calculation of drug quantity the amount of crack cocaine he personally consumed.[2] As this argument concerns the district court's interpretation of the Sentencing Guidelines, we review the district court's decision *de novo.* *United States v. Flowers*, 55 F.3d 218, 220 (6th Cir. 1995).

The base offense level in the case of a conspiracy is determined on the basis of "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3. In determining the quantity of drugs for which a particular defendant is responsible, "the central concept . . . is

---

[2]Other issues raised by Powers regarding drug quantity are addressed in the unpublished appendix to this opinion.

foreseeability." *United States v. Innamorati*, 996 F.2d 456, 488 (1st Cir. 1993).

In support of his argument, Powers cites *United States v. Thomas*, 49 F.3d 253 (6th Cir. 1995). In *Thomas,* the defendant was convicted of distributing and possession with intent to distribute crack cocaine. His sentence was based on a drug quantity which included 6.32 grams of crack – 4.17 grams that he sold to a confidential informant as well as 2.15 grams found on him during a search immediately after the sale. He argued on appeal that the evidence at trial showed that he sold 4.17 grams of crack and that the other 2.15 grams were for his personal use, not for sale, and should not have been included in the district court's calculation of his sentence. This Court reviewed the trial testimony of a special agent which indicated that only dealers would have that amount of crack (2.15 grams) at one time. *Thomas*, 49 F.3d at 259-60. This Court then concluded that there was sufficient evidence to hold the defendant responsible for the entire 6.32 grams and that the district court's sentence was not clearly erroneous. *Id.* at 260. Thus, *Thomas* did not hold, as Powers asserts, that personal consumption cannot be included in the weight calculation for conduct relevant to a conspiracy. This court merely ruled that the district court had not committed clear error. Moreover, the defendant in *Thomas* had not been convicted of a conspiracy.

Although this Circuit has not yet addressed the issue presented by Powers, several other circuits have. In *United States v. Innamorati*, 996 F.2d 456 (1st Cir. 1993), the First Circuit concluded that drugs for the defendant's personal use should be included in the courts calculations for sentencing purposes. The court explained:

Although [defendant] argues that he should not be held responsible for cocaine that he purchased for personal use, this confuses the standard for criminal liability with that for sentencing accountability. Purchases by an addict or casual user for personal use may not automatically