**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony TAYLOR, Defendant–
Appellant.**

**No. 99–1557.**

United States Court of Appeals,
Sixth Circuit.

May 16, 2001.

Before COLE and GILMAN, Circuit Judges; ALDRICH, District Judge.*

AMENDED OPINION

COLE, Circuit Judge.

Defendant–Appellant Anthony Taylor appeals his conviction and sentence for conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846, and two counts of distributing or aiding and abetting in the distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Taylor alleges that the district court erred in prohibiting him from impeaching a prosecution witness based on his bias, and in failing to give the jury an instruction on addict-informant credibility. Taylor further argues that the judge did not have a sufficient factual basis for two sentence enhancements, one based on a leadership role in the conspiracy, and one

based on the amount of drugs attributable to him. Finally, Taylor contends that his sentence is improper in light of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). For the following reasons, we AFFIRM the conviction and sentence.

## I. BACKGROUND

After a tip from a Government informant seeking lenience in a non drug-related offense, the Drug Enforcement Agency ("DEA") began to investigate a drug operation with a significant street-level sales network centered around Genessee Avenue on the west side of Detroit. To develop evidence against the drug ring, undercover DEA agent Milton Galanos made several controlled purchases of crack in the parking lots of various fast food restaurants in Detroit and the surrounding suburbs. Based on the evidence derived from this sting operation and from the statements of co-defendants Carl Boyd and David Griffin, the Government arrested and eventually charged Taylor with six drug-related charges. Count One charged Taylor with conspiracy to distribute cocaine base (crack) in violation of 21 U.S.C. § 846, along with David Griffin, Carl Boyd, Johnny Ray Jones, Clarence Washington, and Aaron Lloyd. Counts Two through Five charged distributing or aiding and abetting in the distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The district court dismissed the sixth count.

Taylor's trial began on October 6, 1998. At trial, evidence was presented that Taylor supplied the crack for the Genessee Avenue dealers, including Boyd and Griffin, and that Taylor was ultimately the

---

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

supplier and organizer of the controlled sales. Boyd and Griffin testified against Taylor as a part of their plea agreements. The jury acquitted Taylor on Counts Two and Three, but convicted him on Counts One, Four, and Five on October 16, 1998. This timely appeal follows.

## II. DISCUSSION

### A. Impeachment by Bias

■ Taylor's first assignment of error is that the trial judge prevented him from impeaching the testimony of co-defendant David Griffin based on Griffin's bias. Griffin allegedly stated at a bond hearing that Taylor shot him, or ordered others to shoot him. Taylor claims that, in either a pre-trial motion or discussion, his trial counsel indicated his intent to cross-examine Griffin regarding that statement and his motivation for testifying. He further claims that the judge would not allow such inquiry under Fed.R.Evid. 608(b)(1), which bars evidence of extrinsic collateral matters.

The record, however, does not support this claim. The parties stipulated at trial that Taylor did not wound or shoot Griffin, and Taylor never attempted to introduce evidence of this alleged bias. The record does not reflect any motions, discussions, or rulings on the issue of cross-examination. If such discussions took place off the record, in chambers for example, Taylor could have availed himself of Fed. R.App. P. 10(c), which permits the appellant to prepare a statement of the proceedings from the best available means, including the appellant's recollection. Based on Taylor's failure to make such a record, we decline to review this issue on appeal. *See United States v. Burns*, 104 F.3d 529, 539 (2d Cir.1997).

### B. Addict–Informant Instruction

■ Taylor asserts that the district court's refusal to instruct the jury on the credibility of a drug-addicted informant, following the Sixth Circuit Pattern Criminal Jury Instructions § 7.06(B) (1991), was reversible error. Without the instruction. Taylor argues, the jury did not have enough information to assess the credibility of co-defendant Carl Boyd, an admitted drug addict. Taylor did not object at trial; therefore, our review is limited to plain error. *See* FED. R. CRIM. P. 30; *United States v. Thomas*, 11 F.3d 620, 629 (6th Cir.1993).

■ The general standard for appellate review of jury instructions is whether the instructions, taken as a whole, fairly and adequately state the controlling law. *See United States v. Sheffey*, 57 F.3d 1419, 1429 (6th Cir.1995). A district court's refusal to provide an instruction constitutes reversible error "only if that instruction is: (1) a correct statement of the law; (2) not substantially covered by the charge actually delivered to the jury; and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991) (citation omitted). That the instruction is found in the Pattern Criminal Jury Instructions is not dispositive. We assess the applicability of the instructions on a case-by-case basis. *See United States v. Wolak*, 923 F.2d 1193, 1198 (6th Cir.1991). Although our circuit has reversed convictions based on a failure to give an addict-informant instruction, *see, e.g., United States v. Griffin*, 382 F.2d 823, 828–29 (6th Cir.1967), there is no *per se* rule that a court must give an addict-informant instruction whenever a drug addict testifies. *See United States v. Brown*, 946 F.2d 1191, 1195 (6th Cir.1991) (citing *United States v.*

*McGhee,* 882 F.2d 1095, 1100 (6th Cir. 1989)).

Considering the instructions as a whole and in context at trial, we find that the jury had enough information with which to assess Boyd's credibility. The judge gave the jury the following instructions:

[Y]ou should ask yourself if the witness had any relationship to the government or to the defendant or anything to gain or lose from the outcome of the case that might have influenced his or her testimony.

You have heard the testimony of Carl Boyd and David Griffin. You have also heard that they were involved in the same crime that the defendant is charged with committing and that each of them agreed to testify in this trial and was promised that the government would recommend a reduced sentence to be imposed. You should consider their testimony with more caution than the testimony of other witnesses. Do not convict Mr. Taylor based on the unsupported testimony of such a witness standing alone unless you believe his testimony beyond a reasonable doubt.

The addict-informant instruction provides:

An addict may have a constant need for drugs, and for money to buy drugs and may also have a greater fear of imprisonment because his supply of drugs may be cut off. Think about these things and consider whether his testimony may have been influenced by the government's promise [of a reduced sentence in exchange for his testimony].

Pattern Criminal Jury Instructions § 7.06(B). Given the district court's strong wording of the accomplice instruction, we do not believe that this additional addict-informant instruction would have cast significantly more doubt on Boyd's testimony, nor would it have significantly assisted the jury in gauging Boyd's credi-

bility. In addition, a "greater fear of imprisonment" could not have influenced his testimony because at the time he provided evidence against Taylor, he was already being held pending his sentencing hearing and was facing ten years' imprisonment under the terms of his plea agreement. *See Scott v. Mitchell,* 209 F.3d 854, 882–83 (6th Cir.2000), *cert. denied,* 531 U.S. 1021, 121 S.Ct. 588, 148 L.Ed.2d 503. On these facts, the judge's failure to instruct the jury as to the credibility of an addict-informant is not plain error.

### C. Sentencing

The indictment charged Taylor with distributing five or more grams of crack, which carries a 40–year maximum, and conspiracy to distribute 50 or more grams of crack, which carries a maximum sentence of life in prison. In determining a sentence for Taylor, the district court judge found that Taylor had distributed between 500 and 1500 grams of crack, which resulted in a base offense level of 36 under the U.S. Sentencing Guidelines Manual § 2D1.1(c) (1998) ("Guidelines" or "U.S.S.G."). Pursuant to U.S.S.G. § 3B1.1(a), the judge then enhanced the offense level to 40 after finding that Taylor had a leadership role in the crime. The combination of this base offense level of 40 and Taylor's Criminal History Category of I resulted in a sentencing range of 292 to 365 months' imprisonment, and the judge sentenced Taylor to 292 months, almost 25 years. *See* Sentencing Table, U.S.S.G. ch. 5, pt. A.

### 1. Leadership Enhancement

■■■ Taylor argues that the sentencing judge had an insufficient factual basis to enhance his sentence under the Guidelines due to a leadership role. We review a sentencing court's factual findings regarding a defendant's role in the conspira-

**470**

cy for clear error, but we review de novo whether those facts support an enhancement for a leadership role. *See United States v. Owusu*, 199 F.3d 329 (6th Cir. 2000). As long as the record supports it, the judge is not required to specify his basis for finding that Taylor had a leadership role. *See United States v. Elder*, 90 F.3d 1110, 1132 (6th Cir.1996).

Taylor was charged with, and convicted of, conspiracy to distribute cocaine base with Griffin, Boyd, Clarence Washington, and Johnny Ray Jones. Under U.S.S.G. § 3B1.1(a), a four-level sentence enhancement is permissible "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants .…" This does not mean that the defendant was the leader of five other people, but that at least five people were involved in the crime, and the defendant organized or led at least one other person. *See Owusu*, 199 F.3d at 347. Taylor's criminal activity involved five or more people.

More complex, however, is the question of whether Taylor exerted control over any of them. Factors we should consider are:

[T]he exercise of decision making authority, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. n. 4. The record indicates that Taylor employed couriers and brokers for the controlled drug sales with Agent Galanos, and that they were acting on Taylor's orders. Taylor supplied the drugs to the couriers and took the money from them immediately after the transactions. Taylor paid them for their services, but only a pittance, keeping the bulk of the profit for himself. Taylor also assumed the role of an authority or deci-

sion-maker in the controlled sales. After the second sale, when Agent Galanos called Boyd to complain that the drug parcel he received was short, Taylor took responsibility and explained that when cocaine cooks down into rock form it loses some mass. During the third sale, Taylor conducted counter-surveillance, which the judge specifically mentioned as behavior evidencing a leadership capacity. In the fourth sale, Taylor followed Griffin and Washington in his car. When Taylor noticed that Washington had a broken windshield, which would attract police attention, he told Griffin to bring the drugs and drive with him. Taylor organized and monitored the drug sales, had agents handle the drugs to avoid his own exposure, and reaped nearly all the proceeds from the sales to the undercover agent. We conclude that this supports a four-level enhancement under U.S.S.G. § 3B1.1(a) for an organizer or leadership role in the transaction.

### 2. *Drug Amount Attribution*

Taylor argues that the sentencing judge did not have a sufficient factual basis for holding him accountable for at least 500 grams of crack and increasing his base offense level to 36. He contends the correct base offense level is 32, based on an attribution of 50 to 150 grams of crack. We review a district court's drug quantity determination for clear error. *See United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir.2000).

Any drugs sold during the time frame in the indictment are attributable to Taylor as long as the sale was both part of the conspiracy and reasonably foreseeable. *See* U.S.S.G. § 1B1.3(a)(1)(A),(B). The Government must prove the amount to be attributed to a defendant by a preponderance of the evidence. *See United States v. Walton,*

908 F.2d 1289, 1302 (6th Cir.1990). Testimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable. *See Hernandez,* 227 F.3d at 697. We do not generally review the district court's evaluation of whose testimony to credit. *See United States v. Gessa,* 57 F.3d 493, 496 (6th Cir.1995).

The Second Superseding Indictment charges that the time frame for the conspiracy was January 1, 1995, to December 31, 1996. The jury found Taylor guilty on Counts 4 and 5, which involved the sale of a total of 121 grams of crack cocaine. Taylor does not contest that this amount is attributable to him in calculating his base offense level. In support of his finding, the judge cited the testimony of Griffin and Boyd that Taylor was the supplier of their Gennessee Avenue sales. Griffin testified that Taylor provided him with at least three eightballs [1] a day, seven days a week (21 eightballs) for about a year (1092 eightballs) for the purposes of sale. Griffin also testified that he once saw Taylor with 500 grams of crack at one time. Boyd testified that he sold at least an eightball every other day for two years (365 eightballs) that Taylor had given him. The judge also credited Boyd's testimony that he saw Taylor with a pound or two of crack at one time. Based on this alone, the judge had a sufficient factual basis by a preponderance of the evidence for the sentence enhancement. *Cf. United States v. Owusu,* 199 F.3d 329, 339 (6th Cir.2000) (determining that co-defendant's testimony that defendant fronted him an ounce "every week or so" for two to three months provided a sufficient basis for sentencing

judge's finding of amount of crack). Accordingly, we find that the amount of drugs attributed to Taylor was not clearly erroneous.

### 3. *Apprendi*

■ In a *pro se* supplemental letter brief, Taylor argues that his sentence should be vacated pursuant to the recent Supreme Court decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In that case, the Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.,* 120 S.Ct. at 2362–63.

At oral argument, the Government conceded that *Apprendi* is implicated in this case because, although the indictment charges Taylor with reference to specific drug amounts, the district court specifically instructed the jury that it only needed to find that some "measurable amount" of crack was involved. Without a jury finding beyond a reasonable doubt that his offense involved at least five grams of crack, the maximum penalty under 21 U.S.C. § 841 is 20 years. *Compare* 21 U.S.C. § 841(b)(1)(C) *with* 21 U.S.C. § 841(b)(1)(A), (B).

Because Taylor did not object at trial to the judge making this determination instead of the jury, we review the district court's decision for plain error. *See* FED. R. CRIM. P. 52(b); *U.S. v. Page,* 232 F.3d 536, 543 (6th Cir.2000), *cert. denied sub nom. United States v. Linton,* —— U.S.

---

1. An eightball is 3.5 grams of crack and is broken down into 10 rocks to sell individually. A quarter ounce is twice as much, that is, 2 eightballs and 20 rocks. One pound is 453.6 grams. *See* U.S .S.G. § 2D1.1, cmt. n.

10. To reach the 500 grams required for a base offense level of 36, Taylor would have to have approximately 143 eightballs, 1430 rocks, 18 ounces, or ½ pound of crack attributed to him.

——, 121 S.Ct. 1389, 149 L.Ed.2d 312 (2001). In our recent decision in *Page*, this Court was presented with a similar factual scenario. In that case, the district court sentenced the defendants beyond the maximum penalty under § 841. *See id.* In addition to their conviction under § 841, however, the defendants were also found guilty of conspiracy to distribute under § 846. *See id.* at 544. We reasoned that if we remanded the case for resentencing, the sentences for these crimes would no longer run concurrently, but instead would run consecutively to reach the Guidelines recommendation range. *See id.* at 544–45 (citing U.S.S .G. §§ 5G1.2(d), 3D1.2 & 3D1.3). Because their sentences would not change, we concluded that there was no plain error. *See id.* at 545.

Here, Taylor's sentence of 292 months' imprisonment exceeds the maximum sentence under § 841(b)(1)(C) of 20 years. Like the defendants in *Page*, however, he also was convicted under § 846, which carries a maximum penalty of 20 years. Even if Taylor was resentenced properly in light of *Apprendi*, the sentences for each charge would run consecutively until reaching 292 months, and thus his overall sentence would not change. Therefore, *Apprendi* error did not prejudice Taylor and affected no substantial right. *See United States v. Rogers*, 118 F.3d 466, 472 (6th Cir.1997). Accordingly, we find no plain error. *See* FED. R. CRIM. P. 52(b).

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Taylor's conviction and sentence.