James "Jay" CAMPBELL,
Defendant–Appellant,

v.

UNITED STATES of America,
Plaintiff–Appellee.

No. 00–5813.

United States Court of Appeals,
Sixth Circuit.

Dec. 26, 2001.

Before KEITH and COLE, Circuit

Judges; and MARBLEY, District Judge.[*]

## OPINION

MARBLEY, District Judge.

Defendant–Appellant, James "Jay" Campbell ("Campbell"), appeals his sentence received for conviction on three counts of conspiring to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846. Campbell assigns error to the district court's calculation of the amount of methamphetamine attributable to him for purposes of sentencing. For the following reasons, the Court AFFIRMS Campbell's sentence.

## I. BACKGROUND

### A. Procedural History

On June 22, 1999, a United States Grand Jury sitting in the Eastern District of Tennessee at Chattanooga returned an eighteen-count superseding indictment charging Campbell and five codefendants with drug trafficking crimes. Count one of the indictment charged that from January 1, 1997, to March 1, 1999, Campbell, along with Michael Neely ("Neely"), Howie Ewton ("Ewton"), Jonathon Hale ("Hale"), Scott Payne ("Payne"), and Donna Bandy ("Bandy"), conspired to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 846. Counts seventeen and eighteen further charged Defendant with distributing methamphetamine in violation of 21 U.S.C. § 841 on October 4, 1996 and November 8, 1996, respectively. Defendant's trial commenced on December 13, 1999, and two days later the jury found Campbell guilty on all three counts.

At sentencing, the district court determined that Campbell's total offense level

was 32, that he had a criminal history category of two, and that the imprisonment range was 135 to 168 months. Campbell was sentenced to a prison term of 146 months to be followed by five years of supervised release on count one, and three years of concurrent supervised release on counts seventeen and eighteen, for a total of five years of supervised release. He was also given a special assessment of $300.[1] From his judgment of conviction Defendant filed his notice of appeal on March 30, 2000.

### B. Statement of the Facts

On October 4, 1996, a confidential informant, supervised and monitored by the 12th Judicial District Drug Task Force, purchased $300 worth of what was later determined to be 3.5 grams of methamphetamine mixture from Defendant. On November 8, 1996, the same informant paid Campbell $100 for an additional 1.3 grams of methamphetamine mixture. During the course of their investigation, law enforcement determined that Campbell was involved with other individuals in the manufacturing of methamphetamine, including David McFarland ("McFarland"), Neely, Ewton, Hale, Payne, and Bandy. Various coconspirators testified at Defendant's trial that Campbell was part of the conspiracy to manufacture and distribute methamphetamine.

In 1997, Neely and Ewton were taught how to cook methamphetamine by McFarland. Thereafter, Neely cooked methamphetamine once every two weeks from the summer of 1997 until he was arrested in November 1998. Neely testified that he met Campbell through his girlfriend

---

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

1. The court determined that the applicable fine was from $17,500 to $6,000,000, which was waived because of Defendant's inability to pay.

around the time that McFarland and Ewton got into trouble and dropped out of the picture around November 1997. Campbell began purchasing methamphetamine from Neely shortly after they were introduced, and usually bought from Neely once or twice a week until Neely's arrest in November 1998.[2] Neely testified that he sold or "fronted" Hale and Campbell seven to fourteen grams of methamphetamine at a time.

Campbell also furnished Neely with ephedrine on three occasions, which would usually come in the form of eight bottles containing 250 tablets each. Bandy supplied Neely with the iodine, which Bandy purchased and had shipped from Tri–County Water Concepts, a water filtration firm in Geneva, Ohio. Several times, however, Bandy paid Campbell to receive the iodine after which she would take it to Neely. Tri–County's records specifically reflect a four pound shipment of iodine to Campbell, who later supplied Neely with four pounds of iodine for use in manufacturing methamphetamine. Neely testified that he utilized a 1:1:2 ratio of ephedrine, red phosphorus, and iodine in his manufacturing method. Neely stated that he got a 60% to 70% yield from his cooks (from 50 grams of ephedrine Neely could obtain 30 grams of methamphetamine, and from 100 grams of ephedrine he could make 70 grams of methamphetamine).

After accepting the Presentence Investigation Report, the district court attributed a total of 716.8 grams of methamphetamine mixture to Defendant, and the court's sentencing guideline calculations were based on that amount. The court used the more conservative seven grams bought every other week from November 1997 until October 1998, at fourteen grams per month for twelve months, to determine that Defendant purchased at least 168 grams of methamphetamine mixture from Neely. The court also considered the four pounds of iodine that Defendant supplied Neely, who then used it to manufacture methamphetamine, for sentencing purposes. Based on Neely's manufacturing method, the court determined that the iodine would have produced at least 544 grams of methamphetamine mixture.[3]

## II. DISCUSSION

### A. Conversion of Crystal Iodine Claim

 Campbell argues that the district court erred in sentencing Defendant by attributing an amount of methamphetamine to him that was based in part on converting a quantity of crystal iodine into methamphetamine. Defendant contends that it was error to count 544 grams of methamphetamine toward his sentencing just because Campbell allowed Bandy to have crystal iodine shipped to his address. Campbell asserts that Bandy sold this iodine to Neely who manufactured methamphetamine, and that Neely knew nothing of the arrangement between Bandy and Campbell until after the sale. Defendant claims that he did not act in concert with Neely, and that the government failed to prove how much, if any, of the iodine shipped to Campbell was used by Neely.

The district court's calculation of the quantity of controlled substances for which a defendant is to be held accountable is a finding of fact reviewed for clear error. *United States v. Berry,* 90 F.3d 148, 152 (6th Cir.1996).

---

2. Neely pled guilty to the conspiracy and was awaiting sentencing at the time he testified in Defendant's trial.

3. Four pounds of iodine could have produced two pounds of methamphetamine. Two pounds = 907.2 grams. 907.2 grams × 60% = 544 grams.

A defendant may be held responsible for an amount of drugs only if the court finds that it is more likely than not that the defendant actually was responsible for at least that amount. *United States v. Ward,* 68 F.3d 146, 149 (6th Cir.1995), *cert. denied,* 516 U.S. 1151, 116 S.Ct. 1028, 134 L.Ed.2d 106 (1996). The quantity need not be ascertained with exact certainty when no controlled substances are seized. *United States v. Brannon,* 7 F.3d 516, 520 (6th Cir.1993). But the approximation must be supported by competent evidence in the record. *Berry,* 90 F.3d at 152. A district court's finding will not be deemed clearly erroneous if the approximation is supported by competent evidence in the record. *Brannon,* 7 F.3d at 520. As the Sentencing Guidelines state: "In making this determination, the court may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved." U.S.S.G. § 2D1.1, cmt. n.12 (2000). The validity of the sentence in a case in which the district court approximates an amount of drugs depends on the basis of the court's calculation. *Ward,* 68 F.3d at 149.

In the case *sub judice,* the trial court imposed Defendant's sentence only after considering the evidence before it and accepting the calculations made in the Presentence Investigation Report. The court calculated the drug quantity based on the amount of methamphetamine Campbell purchased, and the amount of methamphetamine that could have been made from the four pounds of crystal iodine shipped to Campbell. In doing so, the sentencing court considered similar transactions made by Defendant and the capability of Neely's lab, as suggested by U.S.S.G. § 2D1.1, cmt. n.12 (2000).

These conservative estimates did not include the total amount manufactured, amounts distributed to codefendants, other quantities of iodine Bandy had sent to Campbell, or the large quantity of ephedrine Campbell sold to one witness, which was enough to make a quarter pound of methamphetamine. The court instead only included the seven to fourteen grams Defendant personally acquired from Neely every two weeks, and the amount of methamphetamine that could be made from the four pounds of iodine shipped to Defendant. Using the more conservative seven grams bought every other week from November 1997 until October 1998, at fourteen grams per month for twelve months, the court determined that Defendant purchased at least 168 grams of methamphetamine mixture from Neely. And based on Neely's manufacturing method, a 1:1:2 ratio of ephedrine, red phosphorus, and iodine with a 60% to 70% yield, the court calculated that the iodine would have produced at least 544 grams of methamphetamine mixture. (Four pounds could have produced two pounds of methamphetamine. Two pounds = 907.2 grams. 907.2 grams × 60% = 544 grams.) Nonetheless, the court stated that a "sentence in the lower one-third of the range is imposed because the amount of methamphetamine involved in this offense lies in the lower one-third of the applicable drug quantity range."

Appellant is unable to cite any case law to support his contention that the district court erred in its calculations. Campbell only claims that Neely knew nothing of the arrangement between Defendant and Bandy, and that Campbell did not act in concert with Neely. This alone is not enough to vacate his sentence. The trial court considered the relevant testimony and its findings of fact are not clearly erroneous on this issue.

### B. Personal Consumption Claim

Campbell argues that the district court erred in sentencing Defendant, who had been convicted of conspiracy to distribute methamphetamine, by including in the drug quantity calculation methamphetamine that Defendant may have personally consumed. Defendant argues that he was a heavy user of methamphetamine, but could not have been a full-time seller because he had a business as a mechanic. While counts seventeen and eighteen involved sales of 3.5 grams and 1.3 grams, respectively, Campbell asserts that the record is devoid of any evidence that he regularly sold methamphetamine. Defendant maintains that these transactions amounted to nothing more than "one junky selling a small quantity to another junky." And during the Government's first attempted purchase from Campbell through the confidential informant, the sale was not consummated because Defendant did not have anything to sell. Campbell argues that buying methamphetamine for personal use does not constitute relevant conduct under any of the counts of conviction.

A sentencing court's interpretation of the Sentencing Guidelines and sentencing statutes is reviewed *de novo* and its factual findings are reviewed for clear error. *United States v. Swiney*, 203 F.3d 397, 401 (6th Cir.2000); *United States v. Flowers*, 55 F.3d 218, 220 (6th Cir.1995).

This Court addressed the second issue Campbell raises in *United States v. Page*, 232 F.3d 536 (6th Cir.2000). *See also United States v. Antonietti*, 86 F.3d 206 (11th Cir.1996); *United States v. Snook*, 60 F.3d 394 (7th Cir.1995); *United States v. Fregoso*, 60 F.3d 1314 (8th Cir.1995); *United States v. Innamorati*, 996 F.2d 456 (1st Cir.1993). In "determining the quantity of drugs for which a particular defendant is responsible, 'the central concept … is foreseeability.'" *Page*, 232 F.3d at 542 (quoting *Innamorati*, 996 F.2d at 488).

As the First Circuit has stated, a "defendant's purchases for personal use are relevant in determining the quantity of drugs that the defendant knew were distributed by the conspiracy." *Innamorati*, 996 F.2d at 492. In *Page*, a codefendant argued that the district court erred in failing to exclude from its drug quantity calculation the amount of crack cocaine he personally consumed. Yet this Court noted that the "drugs obtained by defendant from his supplier for his personal use were properly included by the district court in determining the quantity of drugs that the defendant knew were distributed by the conspiracy." *Page*, 232 F.3d at 542.

Campbell maintains that the court should not have considered the 168 grams of methamphetamine because Defendant was a heavy user of the drug, and not a full-time distributor. But the fact that Campbell had a business as a mechanic does not mean that he did not have time to also sell drugs. Campbell, like the codefendant in *Page*, was a member of a conspiracy to distribute and manufacture a controlled substance. Campbell obviously sold methamphetamine, as evidenced by the undercover operations in which the informant purchased 3.5 grams from Defendant on October 4, 1996 and 1.3 grams from him on November 8, 1996. Despite what he now claims, the evidence does not support the contention that Campbell was just a "junky" who occasionally sold to other "junkies."

The record does contain evidence that Campbell used methamphetamine. But there is sufficient evidence that he also engaged in a conspiracy with Bandy and Neely to manufacture and distribute methamphetamine. Even if there was a clear indication as to how much Campbell was using, any amount he used was still relevant in determining the quantity of drugs distributed by the conspiracy. The trial court used the more conservative seven

grams that Campbell bought from Neely every other week from November 1997 until October 1998 to calculate the amount attributable to Defendant. At fourteen grams per month for twelve months, the court determined that defendant purchased at least 168 grams of methamphetamine mixture from Neely. The court's findings of fact are not clearly erroneous on this issue, and the court's application of the guidelines was reasonable.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Campbell's sentence.