UNITED STATES of America, Plaintiff–Appellee,

v.

Ricky COOPER, Defendant–Appellant.

No. 00–3681.

United States Court of Appeals, Sixth Circuit.

May 21, 2002.

Before GUY and CLAY, Circuit Judges; and NUGENT, District Judge.*

OPINION

NUGENT, District Judge.

On April 13, 1999, Appellant was charged as follows in a Three–Count Indictment:

Count I—conspiracy to distribute and possess with intent to distribute more than 500 grams of cocaine, a schedule II controlled substance, in violation of 21 U.S.C. § 846;

Count II—knowingly and intentionally unlawfully possessing with intent to distrib-

ute over five grams of cocaine base (crack), a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B)(iii) and 18 U.S.C. § 2; and,

Count III—knowingly and intentionally unlawfully possessing with intent to distribute over 500 grams of cocaine, a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B)(ii) and 18 U.S.C. § 2.

Appellant pleaded not guilty and trial commenced on September 13, 1999. The jury convicted the Appellant on Counts One and Two and the trial court declared a mistrial on Count Three when the jury indicated it was deadlocked.

Appellant presents the following issues for review:

I. Did the trial court err by ordering the disqualification of Appellant's trial attorney?

II. Did the trial court err by denying Appellant's motion to suppress?

III. Did the trial court err by sentencing Appellant in violation of the presentment and Due Process clauses of the Fifth Amendment and the rule of law set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)?

Background

On October 26, 1998, Special Agent Tom Gill received a telephone call from Bureau of Alcohol, Tobacco and Firearms ("ATF") agent Pete Shanahi in New York City informing Agent Gill that Hector Caro had been arrested.[1] Mr. Caro agreed to cooperate with authorities, telling them about

---

* The Honorable Donald C. Nugent, United States District Judge for the Northern District of Ohio sitting by designation.

1. Mr. Caro was wanted for firearms violations and the two agents had been working together to find Mr. Caro.

cocaine and cocaine proceeds in Columbus, Ohio.[2]

After speaking with Agent Shanahi, Agent Gill spoke with Hector Caro later in the day on October 26, 1998. In that conversation, Mr. Caro informed Agent Gill that he had delivered two and one-half kilograms of cocaine to Appellant in Columbus, Ohio eleven days before. Mr. Caro stated that he had been at a house that he believed was rented by Appellant in Columbus, Ohio on Saturday, October 24, 1998. Mr. Caro described the dwelling as a brown brick house which was four or five houses from the intersection of Perry and Third Ave. across from a park. Mr. Caro stated that an old white van would be parked in the rear of the address. On Saturday, October 24, 1998, Mr. Caro saw two and one-half kilograms of cocaine he had delivered earlier to Appellant in the attic of this dwelling.

Mr. Caro told Agent Gill that he had been in contact with Appellant since Saturday October 24, 1998, in order to arrange for the delivery of $35,000 due to Mr. Caro for the cocaine. Mr. Caro stated that he had spoken to Appellant on the morning of October 26, 1998, before Mr. Caro was arrested, and Appellant had informed him that he still had cocaine and that the money he owed Mr. Caro was ready for delivery. Mr. Caro informed Agent Gill that the money would be in a hidden compartment inside a tan Explorer, which should be parked at the rear of the brown brick residence on Third Ave. Mr. Caro stated that the Explorer had an Ohio registration and was registered to Terry Clark. Mr. Caro's brother-in-law was supposed to transport the money to Caro later that night (October 26, 1998).

Based upon Mr. Caro's description of the house on Third Avenue, Agent Gill and members of the FBI Task force located the house and observed a tan Explorer arrive at the house and park in the rear. The vehicle had an Ohio license plate and was registered to Terry Clark.

Based upon this information from Hector Caro, as well as information from Hector's brother Francisco Caro,[3] who was in custody on October 26, 1998, two search warrants were issued at 8:23 p.m. on October 26, 1998 for (1) the dwelling at 539 West Third Avenue,[4] Columbus, Ohio (Appellant's residence) and (2) a 1991 Ford Explorer.

The search warrants were executed on the night of October 26, 1998. The Ford Explorer was stopped and searched first.[5] The investigating agents found $35,115 in a concealed compartment behind the rear seat in the cargo area of the Ford Explorer.

2. Prior to the arrest of Mr. Caro, authorities were not investigating Ricky Cooper.

3. Francisco Caro was in custody pending sentencing on cocaine trafficking charges. Prior to Hector Caro's arrest on October 26, 1998, Francisco Caro stated that he believed that his brother Hector continued to supply cocaine to customers in Columbus since Francisco was arrested in 1996. Francisco believed that one of his brother's customers was named Ricky.

4. At the time the search warrant was issued the address was not known because the agents could not see an address in the dusk.

Agent Gill identified a photograph of the house supplied by Appellant which showed a house number of 539 on the outside of the dwelling.

5. Agents observed two individuals leave the residence at approximately 7:48 p.m., enter the Ford Explorer, and drive away. They were followed and the car was stopped about a mile from 539 Third Ave. in order that the search warrant could be executed. At the time it was stopped, the Explorer was being driven by Charles Glenn and Hector Caro's brother-in-law, Jose Soriano Alfredo Constanzo, was a passenger.

The driver, Charles Glenn, was not arrested but accompanied the agents to 539 West Third Avenue where entry was made using the keys obtained from Mr. Glenn after he was stopped driving the Ford Explorer. In the residence agents found approximately two kilograms (1,981 grams) of cocaine, 23.3 grams of crack cocaine and a digital set of scales and an empty kilo wrapper with cocaine residue in it.

A complaint and arrest warrant were issued the following day. Appellant was indicted April 13, 1999. On June 7, 1999, the Government advised the trial court and Appellant's counsel, Joseph Reed, of statements made by a co-conspirator, Charles Glenn. Mr. Glenn claimed to have delivered drugs to Mr. Reed on two occasions (1994 and late 1998) at the Appellant's request. The trial court held a hearing on the matter a week later. The trial court appointed Steven Brown, in addition to Mr. Reed, to assist Appellant with evaluating the conflict of interest issue. Though Appellant agreed to sign a waiver, the trial court found compelling circumstances required disqualification of Mr. Reed as counsel. Mr. Reed was permitted to sit at counsel table and help in the preparation of Appellant's defense as a "case agent".

The Appellant filed a motion to suppress the evidence obtained during the searches. Following a hearing on the matter, the trial court denied the motion, finding Special Agent Gill conducted a sufficient investigation of the information provided by the unindicted co-conspirator Hector Caro. The trial court also determined Agent Gill's corroboration of the information established Mr. Caro's credibility and reliability. The government subsequently sought to supplement the record stating that Agent Gill had been mistaken when he testified about information obtained from Francisco Caro (Hector's brother). Agent Gill testified that information obtained from Francisco was derived from a memorandum of an interview by other agents. A search of FBI files revealed that the information was obtained from an interview by Agent Gill himself on October 22, 1998. The trial court determined that it was proper for the government to supplement the record and provided the Appellant with the opportunity to re-call Agent Gill to cross examine him on this information. Defense counsel declined to examine Agent Gill on this matter.

## ANALYSIS

### I. Attorney Disqualification

■ Whether the facts in a particular case give rise to a conflict of interest is a mixed question of fact and law that we review *de novo*. *United States v. Walker*, 160 F.3d 1078, 1089 (6th Cir.1998), *cert. denied*, 526 U.S. 1056, 119 S.Ct. 1368, 143 L.Ed.2d 528 (1999)(citing *United States v. Hopkins*, 43 F.3d 1116, 1119 (6th Cir. 1995)).

■ At some point during the investigation, the government learned that the unindicted co-conspirator, Charles Glenn, delivered a half ounce of crack cocaine to defense attorney John Reed while Appellant was in jail. Mr. Glenn had allegedly made a similar delivery to Mr. Reed in 1994. According to the government, while it did not intend to introduce this information at trial, Mr. Glenn was an important witness and his credibility would be a key issue for the jury. The government and the trial court believed that whether or not the information was true, it created an actual conflict of interest in representing Appellant. The trial court said:

First, if Charles Glenn's allegations concerning Mr. Reed are in fact true, an overwhelming conflict exists in that Mr. Reed's representation would likely preclude Mr. Cooper the benefits of unbi-

ased representation with respect to either a plea bargain or trial. The conflict would present a situation where defense counsel would be burdened by concerns of his own personal interests, thus preventing him from engaging in vigorous representation of his client.

Assuming the allegations are untrue, the subject matter still creates an actual conflict of interest. Under the facts of this case, the subject matter gives rise to an area of impeachment which Mr. Cooper could pursue with Mr. Glenn at trial. The defendant could seek to call Mr. Reed as a witness at trial in order to deny Mr. Glenn's allegations. However, the defendant would have to forego the opportunity to impeach Mr. Glenn through Mr. Reed's testimony if Mr. Reed were to continue as his appointed trial counsel.

Second, the defendant did not, and cannot, steadfastly maintain that there is no conflict of interest now, nor that the chances of a conflict developing in the future are remote. In the present case, Mr. Glenn's allegations regarding Joseph Reed are factually intertwined with the allegations against the defendant. The government has indicated that they do not intend to introduce testimony at trial from Mr. Glenn concerning his allegations involving Mr. Reed. Nevertheless, despite the government's decision not to use this information at trial, neither the government nor the defendant has any way of knowing exactly what witnesses will say while on the witness stand, and it appears as though the information which Glenn has alleged regarding Mr. Reed could be revealed at trial. Moreover, in attempting to avoid this information from coming out in the trial, the cross examination of government witnesses could be affected.

(Jt.App. Vol. III at pp. 000545–46.) The trial court also noted that the conflict was brought to Appellant's and the Court's attention more than five weeks before trial. In that time Appellant had the opportunity to meet with his newly appointed counsel, Mr. Brown, several times to discuss both the conflict issue and his case in general. The Court stated that "Mr. Brown is an excellent and experienced criminal defense attorney who has represented many defendants with similar charges in federal court." *Id.* Moreover, the trial court allowed Mr. Reed to sit at defense counsel's table throughout the trial as a "case agent". Thus, after balancing the Appellant's right to have counsel of choice against the Appellant's right to have conflict-free counsel, the trial court determined that Mr. Reed's continued representation of Appellant raised an actual conflict of interest and that compelling reasons existed to necessitate the disqualification of Mr. Reed as trial counsel.

On appeal, Appellant offers very little in support of his position that the disqualification was in error. He suggests that Charles Glenn is a "confirmed liar" and as a result of bizarre allegations, Mr. Reed was disqualified as counsel despite having been Appellant's counsel since 1985. Appellant argues that the government did not intend to use this information at trial and therefore only demonstrated a possibility of potential conflict as opposed to actual conflict. Be that as it may, Appellant takes the position that he signed a knowing waiver of the "potential" for conflict. Relying on DR 5–102(B) of the Ohio Code of Professional Responsibility, the Appellant contends that if Mr. Reed was called as a witness regarding the allegations against him it would have been in the position of attacking the credibility of a government witness in furtherance of his client's defense. According to Appellant,

this does not require disqualification of counsel.[6]

As the Supreme Court has asserted, the Sixth Amendment right to counsel provision was "designed to assure fairness in the adversary criminal process". *Wheat v. United States,* 486 U.S. 153, 158, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

> Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that defendant will inexorably be represented by the lawyer whom he prefers.

*Id.* at 159, 108 S.Ct. 1692. The Supreme Court realized that district courts must pass on the issue of whether to allow a waiver of a conflict of interest by a criminal defendant in the pre-trial context where relationships between parties are not clear and the likelihood and scope of potential conflicts are hard to predict. As such, the district court "must be allowed substantial latitude in refusing waivers of conflicts of interest ...". *Id.* at 162–63, 108 S.Ct. 1692.

Upon careful review of the record, it is clear that the district court did not err in finding an actual conflict or in not permitting the Appellant to waive the conflict. The allegations against Mr. Reed were interrelated with the crimes with which Appellant was charged. Even assuming the allegations were false, it was likely that Appellant's defense would have been compromised by Mr. Reed's reluctance to vigorously cross examine Mr. Glenn. Moreover, the Appellant was not prejudiced by the disqualification of Mr. Reed as trial counsel. Accordingly, Appellant's first issue for review is overruled.

## II. Motion to Suppress

■ The standard of review for suppression decisions is de novo for the district court's findings of law and clear error as to the district court's findings of *fact. U.S. v. Matthews,* 278 F.3d 560, *561, 2002 WL 23908 (6th Cir.2002) *(citing U.S. v. Guimond,* 116 F.3d 166, 169 (6th Cir.1997); *U.S. v. Latouf,* 132 F.3d 320, 331 (6th Cir.1997)).

■ The Appellant raised four grounds in support of his motion to suppress:

1) The affidavit supporting the application for the search warrant recklessly omitted material facts regarding the location of the residence and the white van in the driveway, which if included in the affidavit would have negated the Magistrate Judge's finding of probable cause;

2) information supporting probable cause was stale;

3) the informant (Caro) who provided information to Agent Gill was not reliable or credible;

4) the information provided by Mr. Caro was not sufficiently investigated and/or corroborated.

On appeal, the crux of the Appellant's issue is twofold: (1) conflicting information given by Hector Caro regarding the amount of cocaine delivered to Appellant's residence and (2) the time the search warrants were executed.

Appellant contends that at trial Hector Caro changed his statement to Agent Gill on more that one occasion concerning the quantity of cocaine delivered to Appellant's residence. This apparently goes to Appellant's arguments in his motion to suppress that Mr. Caro was not a reliable or credi-

---

**6.** Appellant does not contend that Mr. Brown's representation was ineffective, nor does he demonstrate any prejudice by the change in counsel.

ble witness and/or that the information provided by Mr. Caro was not sufficiently investigated or corroborated. Mr. Caro's subsequent inconsistent statements regarding the quantity of cocaine delivered to Appellant does not negate the fact that Mr. Caro delivered cocaine to Appellant before the search warrant was issued and had heard from Appellant on the day the warrant was issued that he still had cocaine. Moreover, the agents assigned to the case were not aware of the inconsistent statements from Mr. Caro at the time they applied for the warrants. The discrepancies came to light after the warrants had been executed.

Probable cause for a search warrant is to be examined under a "totality of the circumstances" test. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The affidavit supporting the request for a warrant must show a " 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* at 236, 103 S.Ct. 2317. Regardless of the amount of cocaine that was originally delivered to Appellant, the testimony in support of the warrant clearly demonstrates a substantial basis for concluding that a search would uncover evidence of wrongdoing. The government correctly points out that Mr. Caro's failure to disclose the correct amount of cocaine delivered to Appellant's residence could have been used to impeach Mr. Caro's testimony. But, even though Mr. Caro changed his statements about the quantity of cocaine delivered, Mr. Caro nonetheless delivered the cocaine to Appellant prior to the search and at least 2 kilograms was stored at the residence on the day of the search.

Upon review of the record and the arguments of the parties, we find that the affidavit submitted by Agent Gill sets forth sufficient probable cause to support the finding of Magistrate Judge Abel that a search warrant was warranted for 539 Third Ave., Columbus, Ohio and a tan Ford Explorer, registered in the name of Terry Clark.

■ Appellant also raises for the first time on appeal, an issue concerning the execution of the search warrants. Specifically, Appellant alleges that the testimony of Detective Drew McEvoy at trial indicates that he entered Appellant's residence around 7:30 p.m. when the search warrant was not issued until 8:23 p.m. Appellant also points to the testimony of Officer Runyon who testified that he made the traffic stop of the Ford Explorer at 8:05 p.m., after he was told that there was a warrant. Appellant never renewed his motion to suppress at the district court level after this testimony was presented. Accordingly, this issue was not preserved for appeal. Appellant's motion to suppress did not raise this issue. While a ruling on a motion to suppress may be supported by trial testimony, the motion to suppress must be renewed after the new testimony or evidence supporting the motion to suppress is given. *United States v. Thomas*, 875 F.2d 559, 562 n. 2 (6th Cir.), *cert. denied*, 493 U.S. 867, 110 S.Ct. 189, 107 L.Ed.2d 144 (1989). "Unless the district court is given an opportunity to correct the error, an appellate court cannot review evidence presented at trial which casts doubt upon a pre-trial suppression motion." *Id.*

Even if Appellant had preserved this issue for appeal, we find that the trial record as a whole supports the government's contention that the warrants were properly executed. At trial Detective McEvoy did not contend that he went into the house alone, or that he entered without a warrant. Detective McEvoy, a canine handler, testified that he conducted a ca-

nine search at 6:50 p.m., however, his report indicated that he responded to the area of West Third Avenue at 6:50 p.m. The report did not list the time of entry. At trial Detective McEvoy testified that he had to wait before entry was made into the residence with other agents.

Sgt. Michael Powell, who was involved in the surveillance of the residence from around 4:10 p.m. until the Ford Explorer left the residence at 7:48 p.m., testified that entry had not been made prior to 7:48 p.m. Agent William Davitch, who was responsible for preparing the inventory for the search of the residence testified that the search began at 9:15 p.m. He recorded that time in his surveillance log and in a memorandum that he prepared within a day or two of the search. Agent Davitch was part of the first group of individuals to enter the residence. Detective McEvoy was with him when entry was made. No agent made entry before Agent Davitch.

With respect to the search of the Ford Explorer, the record reflects that Officer Runyon made the traffic stop of the car at 8:05 p.m., based upon the lack of a light illuminating the license plate. The car was stopped within a mile or so of the residence. No time was given for the actual search of the vehicle in execution of the search warrant. The driver, Charles Glenn, was not arrested but accompanied officers to the residence so that they could enter the residence with the key to the house which was on the key ring with the car key. The residence was entered at 9:15 p.m. The close proximity of the stopped car to the residence supports the government's position that the car was not searched until after the warrant was issued at 8:23 p.m. since it would take only a minute or two to transport Mr. Glenn from the stopped car to the residence to open the door.

Based upon the entire testimony and evidence elicited at trial, we find that it is clear that the search warrants were properly executed.

### III. Sentencing/Apprendi Issue

Since Appellant did not object to the redaction of the quantity of drugs from the jury charge at trial, review of the district court's sentencing decision is for plain error. *United States v. Stafford,* 258 F.3d 465, 470 (6th Cir.2001).

■ The Appellant contends that the district court erred by sentencing him in violation of the presentment and Due Process clauses of the Fifth Amendment, the notice and jury trial guarantees of the Sixth Amendment and the rule of law set forth in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi,* the Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt[,]" rather than be submitted to a judge and proved by a preponderance of the evidence. *Id.* at 469, 490, , 120 S.Ct. 2348497, 120 S.Ct. at 2362–2363. This circuit has recently applied *Apprendi* to the federal drug statute set out in 21 U.S.C. § 841. *See, e.g., United States v. Strayhorn,* 250 F.3d 462, 469–70 (6th Cir.2001); *United States v. Ramirez,* 242 F.3d 348, 350 (6th Cir.2001); *United States v. Flowal,* 234 F.3d 932, 936 (6th Cir.2000). In so doing, we have held that the determination of drug quantity, when it subjects a defendant to enhanced sentencing under § 841(b), constitutes an element of the offense that the government must prove to the jury beyond a reasonable doubt. *U.S. v. Garcia,* 268 F.3d 407, 412 (6th Cir.)

citing *Strayhorn*, 250 F.3d at 468; *Flowal*, 234 F.3d at 936.

In this case the district court redacted, over the objection of the government, the quantity of drugs charged in the indictment from the jury charge. Appellant was sentenced to a 365 month prison term on Counts One and Two on May 11, 2000, six weeks before *Apprendi* was decided. Appellant's 365 month sentence exceeds the 20 year maximum sentence for a conviction under 21 U.S.C. § 841(a)(1) and (b)(1)(C) for distribution or possession with intent to distribute cocaine or cocaine base, without regard to quantity. Under *Apprendi*, before the district court could impose a sentence in excess of 20 years, a jury must make factual findings that the amount of cocaine Appellant conspired to distribute and possess with intent to distribute exceeded 500 grams in Count I. and that Appellant possessed with intent to distribute more than 5 grams of cocaine base in Count 2.

### A. Nature of Controlled Substances

■ In addition to the quantity argument, Appellant argues that *Apprendi* also requires the jury to determine the "nature" of the controlled substance as the nature of the substance (cocaine or cocaine base) triggers different sentences. Appellant suggests that the nature of the controlled substance was not submitted to the jury because the district court gave the following instruction:

> In addition, the government is not required to show that the defendant knew the substance involved was cocaine or cocaine base. It is sufficient if the evidence establishes beyond a reasonable doubt that defendant knew that he possessed some type of controlled substance and that he did, in fact, possess with intent to distribute cocaine base or a mixture containing cocaine base as

charged in Count 2, or cocaine or a mixture containing cocaine as charged in Count 3.

(Jt.App. Vol.II at 464). Appellant contends that on remand any new sentence imposed must not exceed the maximum penalty set forth in 21 U.S.C. § 841(b)(1)(D) which provides a maximum sentence of 5 years (or 10 years if Appellant had a prior felony drug conviction).

The government argues that the nature of the controlled substances was submitted to the jury because, notwithstanding the instruction noted above, the indictment and the jury instructions and jury verdict made it very clear that Appellant was charged and convicted of cocaine and crack cocaine offenses. Review of the trial transcript and jury charge reveals that the government is correct. The jury was instructed for purposes of the conspiracy charge that the alleged purpose of the conspiracy was the distribution and possession with the intent to distribute cocaine and that an element of the offense of distribution of a controlled substance included that the "defendant knew that the substance was cocaine". (Jt.App. Vol.II at 452–53) Thus, the jury instructions required the jury to find that Appellant conspired to distribute and/or to possess with intent to distribute some quntity of cocaine in order to find Appellant guilty of Count 1 beyond a reasonable doubt. (Jt.App. Vol.II at 453).

Similarly, with respect to Count 2, the jury was instructed that the Appellant was charged with possession with intent to distribute cocaine base. In order to find the Appellant guilty of possession with intent to distribute cocaine base the jury had to decide whether or not the Appellant did possess with intent to distribute a controlled substance and whether that controlled substance was, in fact, cocaine base or a mixture containing cocaine base as

charged in Count 2. (Jt.App. Vol.II at 463). It is clear that the nature of the controlled substances at issue was determined by the jury beyond a reasonable doubt.[7]

B. Quantity of Controlled Substances

■ While the government concedes that the district court erred in not permitting the jury to decide the quantity of cocaine and cocaine base, it contends that the error does not require a remand for resentencing because the error was not "plain" and did not affect substantial rights.

We have described the "plain error" review as follows:

First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, we must then consider whether to exercise our discretionary power under [Fed. R.Crim.P.] 52(b), or in other words, we must decide whether the plain error affecting substantial rights affected the fairness, integrity or public reputation of judicial proceedings.

*Stafford*, 258 F.3d at 470, *citing United States v. Thomas*, 11 F.3d 620, 630 (6th Cir.1993), *cert. denied*, 511 U.S. 1043, 114 S.Ct. 1570, 128 L.Ed.2d 214 (1994). It is clear that imposing additional years beyond that authorized by a jury's verdict affects a defendant's substantial rights.

*See United States v. Page*, 232 F.3d 536, 544 (6th Cir.2000); *United States v. Barajas–Nunez*, 91 F.3d 826, 833 (6th Cir.1996). Moreover, a sentencing error seriously affects the fairness, integrity or public reputation of judicial proceedings when a court's error results in imposition of a sentence which is not authorized by law. *Id.; United States v. Williamson*, 183 F.3d 458, 464 (5th Cir.1999).

Appellant was sentenced to 365 months on each count with the sentences to run concurrently. The Government argues that the Sentencing Guidelines would require that the sentence imposed on the substantive count run consecutive to the sentence on the conspiracy count, to the extent necessary to produce a combined sentence equal to the total punishment. *See Page*, 232 F.3d at 544–55; U.S.S.G. § 5G1.2(d); *see also* U.S.S.G. § 3D1.2 and 3D1.3. In *Page*, all four of the defendants were convicted of conspiracy to distribute crack cocaine and three of the four were convicted of additional counts of distribution of crack cocaine. The district court determined the quantity of drugs in violation of *Apprendi* and sentences exceeding the maximum of 20 years were imposed on all of the defendants. On appeal, only the sentence against the defendant Page, who was convicted of a single count of conspiracy, was found to be plain error in that his sentence was ten years more than the prescribed statutory maximum and thus his substantial rights were affected and the fairness of the proceedings was under-

7. Even if the government had failed to prove that Appellant knew that the substance he possessed was cocaine or cocaine base, *Apprendi* would not be implicated. *See Garcia*, 252 F.3d at 844 (rejecting defendant's argument that the government must prove *mens rea* as to the type and quantity of the drugs, as statute only requires that the defendant "knowingly or intentionally . . . possess with

intent to manufacture, distribute or dispense, a controlled substance"); *accord United States v. Barbosa*, 271 F.3d 438, 458 (3d Cir.2001)(holding that "the structure of the drug statutes and the policies behind them show that the Government's *mens rea* burden has not changed with the advent of *Apprendi*").

mined. Plain error was not found with regard to the sentences imposed on the other defendants because each of the other three defendants were convicted of one or more counts of distribution of crack cocaine in addition to the conspiracy charge and, absent the sentencing error, their sentences would have been the same as those which were imposed. *Id.* at 545.[8] This case cannot be distinguished from *Page.* Appellant was not prejudiced by the error since, absent the error, his sentence would have been the same as that which was imposed.[9] Accordingly, as in *Page,* we decline to exercise our discretion as to Appellant's sentence because Appellant can show no meaningful benefit that he would receive from vacating his sentence and remanding for resentencing.

## CONCLUSION

For the foregoing reasons, we affirm the Appellant's convictions and sentence.

---

8. Indeed, the sentences of the defendants Linton (convicted of an additional six counts of distribution of crack cocaine), Hill (convicted of one additional count of distribution of crack cocaine) and Powers (convicted of two additional counts of distribution of crack cocaine), if ordered to run consecutively to the conspiracy conviction, would exceed the sentences imposed by the District Court which were as follows: Linton–360 months, Hill–360 months and Powers–262 months.

9. As in *Page,* Appellant's sentence after remand could remain the same. It is also possible that it could change, either in Appellant's favor or not. The fact that the sentence could change does not require vacation of the original sentence under our plain error review.