**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a0052n.06
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jan 13, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Fernado Ortiz, aka Fernando Ortiz, | ) | WESTERN DISTRICT OF KENTUCKY |
| aka Alex Florez-Torres | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:     MERRITT and COLE, Circuit Judges; VARLAN, District Judge.[*]

## I.  Overview

**MERRITT, Circuit Judge.**  Fernando Ortiz was charged with possessing methamphetamine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), and with possessing a gun after entering the United States illegally, in violation of 18 U.S.C. § 922(g)(5)(A).  Ortiz thereafter moved to suppress the evidence against him (a "bindle" of meth, a syringe, and a burned piece of aluminum foil) on the basis that the police obtained it through conducting a non-consensual, warrantless search of his apartment.[1]  Pursuant to the magistrate judge's recommendation, the district court denied

---

[*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

[1]Ortiz also challenged as lacking in probable cause the search warrant that the police used to conduct a second, more thorough search of his apartment that produced additional drugs and drug paraphernalia, an unloaded AR-15 assault rifle, and several clips of ammunition.  However, he does not raise this issue on appeal beyond arguing that, "[i]f the

Ortiz's motion. Ortiz then pled guilty to the charged offenses, and the district court sentenced him to 97 months in prison.[2] On appeal, Ortiz challenges the district court's order denying his suppression motion by claiming, once again, that he did not consent to the search that yielded the incriminating evidence. First, he asserts that the police entered his apartment without his consent. (Appellant's Br. 23.) Alternatively, Ortiz argues that even if this initial entry was consensual, the subsequent search of his back bedroom was not. *Id.* at 23-24.

## II. Facts

The facts relevant on appeal are as follows. On October 6, 2006, uniformed Louisville Police Officers Donald Schrout and Dennis Embry knocked on Ortiz's door.[3] They suspected Ortiz of attempted sexual assault because some of his neighbors and the victim, a thirteen year-old girl, had identified him as the perpetrator. According to the officers, once Ortiz answered the door, they explained to him in English the reason for their presence, and then asked him (also in English) if they could step into his apartment to discuss the accusations with him further. Both officers testified that Ortiz responded by stepping back, gesturing, and opening the door wider, which they interpreted as a grant of affirmative, nonverbal consent to enter. Once inside his living room, the officers asked Ortiz (an illegal immigrant) to produce identification, but he was unable to readily satisfy their

---

[c]ourt suppresses the plain view items seized from the search of Mr. Ortiz's bedroom, then the search and seizure warrant that contained the tainted information should be suppressed as well." (Appellant's Br. 24.)

[2] Ortiz entered his guilty plea pursuant to a plea agreement that does not bar the instant appeal. (Appellee's Br. 4-5.)

[3] Ortiz claims that three officers were involved in the search. However, Schrout, Embry, and Detective Collin King (whom Schrout radioed after finding the incriminating evidence) were the only members of law enforcement to testify at the suppression hearing, and so the other officer – if indeed there was one – remains unidentified.

request. However, Ortiz indicated that he might have some form of identification (such as mail or check stubs) in his back bedroom. There is some disagreement over what happened next. Officer Schrout testified that he specifically asked to accompany Ortiz into his bedroom, and that Ortiz signaled his consent by a gesture. Officer Embry was more equivocal, and indicated that he was unsure whether either officer verbally requested permission to follow Ortiz. Ortiz, for his part, asserts that neither officer requested – nor did he give – such permission.[4] It is undisputed, however, that Ortiz did not protest when the officers followed him down the hall and into his bedroom, at which point Officer Schrout observed the drugs and drug paraphernalia in plain view on a cabinet.

### III. Discussion

#### 1. Consent to Initial Police Entry

We review for clear error the district court's finding that Ortiz consented to the officers' entry into his apartment and assess the evidence in the light most favorable to the prosecution. *See United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc); *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006). However, the government bears the burden of proving that Ortiz freely and voluntarily consented to the warrantless search. *See Carter*, 378 F.3d at 587. It has done so in this case. Consent to a search may be nonverbal so long it is not the product of "duress,

---

[4]At the suppression hearing, Ortiz provided an account of the search that painted a far more coercive picture of police activity. Specifically, he asserted that three officers asked him for identification while they were standing outside his front door, and that they barged into his apartment when he turned to retrieve his ID from his bedroom. He also testified that Officer Schrout grabbed his hand and detained him in the living room while the two other officers searched his back bedroom. This version of events directly contradicted the testimony of Officers Schrout and Embry, who both stated that it was Officer Schrout who found the drugs. Ortiz backtracks on appeal, attributing his initial story to a probable case of "memory lapse" since the police later detained him after finding the illicit materials. (Appellant's Br. 16.)

coercion, or trickery." *United States v. Buchanan*, 904 F.2d 349, 355 (6th Cir. 1990). Although there is no evidence that the police officers threatened him either verbally or physically, Ortiz nonetheless maintains that his actions (stepping back, gesturing, and opening the door wider) were an expression of his submission to authority rather than an unequivocal statement of free and voluntary consent. (Appellant's Br. 23.)

It is true that "stepping back in fear is not consent." *Carter*, 378 F.3d at 589 (citing *Robbins v. MacKenzie*, 364 F.2d 45, 48 (1st Cir. 1966)). Moreover, it is also true that the presence of uniformed policemen at his door, and the nature of his discussion with those officers, likely rendered Ortiz nervous. However, the district court did not clearly err when it concluded, pursuant to the magistrate judge's recommendation, that more was required to vitiate the assent that Ortiz otherwise unambiguously conveyed by his conduct. In *Carter*, this court held that uniformed police officers had validly obtained consent to enter when they "properly asked permission . . . and [the suspect] stepped back, letting them in." 378 F.3d at 588. Ortiz does not sufficiently distinguish the facts of that case from his own. Further, although Ortiz's ability to understand English is indeed relevant to the question of whether his consent was valid (he is a native Spanish speaker, albeit one who has spent the past ten years living in the United States), he does not claim that he failed to understand the officers' request. *See United States v. Riascos-Suarez*, 73 F.3d 616, 625 (6th Cir. 1996). For their part, Officers Schrout and Embry testified that they had no trouble communicating in English with Ortiz. Finally, Ortiz does not assert that he lacked awareness of his right to refuse entry. *See United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998). Thus, we hold that Ortiz gave the police consent to enter his apartment.

## 2. Consent to the Bedroom Search

We also hold that Ortiz consented to the search of his back bedroom. Ortiz claims that the district court erred by crediting the conflicting testimony of Officers Schrout and Embry over his own. However, this court has repeatedly held that "[f]indings of fact anchored in credibility assessments are generally not subject to reversal upon appellate review." *See, e.g., United States v. Hudson*, 405 F.3d 425, 442 (6th Cir. 2005) (internal quotations omitted). Moreover, there is no dispute on appeal that Ortiz's demeanor was cooperative and that he did not protest when the officers followed him down the hall and entered his bedroom. It was not unreasonable for the officers to believe that they had permission to do so. *See Carter*, 378 F.3d at 588 (noting that, when interpreting an exchange with a suspect, "police are not held to a higher standard . . . than an ordinary person"). The district court did not err by concluding that the bedroom search fell within the scope of Ortiz's consent.

For the foregoing reasons, the order of the district court is AFFIRMED.