NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0226n.06

No. 15-1568

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 27, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| BILLY CHAMBERS, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE: BATCHELDER and WHITE, Circuit Judges; and LIPMAN, District Judge.**[*]

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Billy Chambers, who entered a conditional plea of guilty to the charge of felon in possession of a firearm in violation of 18 U.S.C. § 922(g), appeals the denial of his motion to suppress the gun police discovered in his pocket when they stopped him for walking down the middle of a street where a sidewalk was provided. Finding no error, we **AFFIRM**.

**I.**

Chambers sought to suppress evidence of the gun on the grounds that the troopers did not have probable cause to stop him for a civil infraction, and that he did not voluntarily consent to the pat down that yielded the gun.[1] At the hearing on the motion to suppress, Michigan State

---

[*] The Honorable Sheryl H. Lipman, United States District Judge for the Western District of Tennessee, sitting by designation.

[1] Chambers also raised a due process claim, arguing that the Michigan State Police had a policy of stopping people—primarily black men—in the streets even where sidewalks were impassable. Because Chambers did not introduce evidence of such a policy or address it in his supplemental briefing following the hearing on his motion, the district court deemed it

Police troopers Terry Berdan and Brian Kross testified that around 10 P.M. on August 31, 2013, they were patrolling in a marked police vehicle when they observed Chambers walking down the middle of Bonbright Street in Flint. They stopped to advise Chambers that it is a civil infraction to walk in a street where a sidewalk is provided, and Berdan asked Chambers to "step over to the vehicle." (PID 138-39.) Chambers approached the vehicle and repeated twice, "I don't have anything on me." (PID 204.) Berdan told Chambers that the troopers had stopped him because he was walking in the street, and then asked if Chambers would mind if Berdan patted him down for weapons and/or drugs, to which Chambers replied "Go ahead." (*Id.*) Berdan then took Chambers over to the police car. (*Id.*) Without being prompted, Chambers turned around, put his hands on the troopers' car, and assumed a position traditionally associated with pat downs. As Berdan conducted the pat down, he felt what he believed to be a handgun in Chambers' front pocket. He then pulled up the pocket flap so he could see inside, and observed a handgun. He placed Chambers in handcuffs and seized the gun. Kross estimated the entire encounter lasted less than five minutes, and Berdan estimated it lasted about one minute and twenty seconds. Berdan described Chambers' demeanor as being "nervous, but cooperative" throughout their exchange. (PID 198.)

Hana Cheatom, a life-long resident on the block where Chambers was stopped, testified that people often walk in the street on her block and others nearby where the sidewalks are in disrepair. She also testified that the sidewalk in front of her house is "in good shape" because her family personally repaired it, but that the rest of the sidewalks on the block are "hit [or] miss." (PID 116-17.)

---

abandoned, and in the alternative rejected it as unsupported. Chambers does not advance this argument on appeal.

Chambers did not testify at the hearing on the motion to suppress, but argued that the condition of the sidewalk and surrounding area made it necessary for him to walk in the street, and that he acquiesced to the pat down only in response to the troopers' show of authority. The district court rejected both arguments, and Chambers renews them on appeal.

**II.**

When reviewing a district court's denial of a motion to suppress, we review conclusions of law de novo and findings of fact and credibility determinations for clear error. *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009); *see also United States v. McCauley*, 548 F.3d 440, 447 (6th Cir. 2008). A finding is clearly erroneous when although there is evidence to support it, our review of the evidence as a whole leaves us with the definite and firm conviction that a mistake has been made. *United States v. Lucas*, 640 F.3d 168, 173 (6th Cir. 2011). We review "the evidence in the light most likely to support the district court's decision." *See*, 574 F.3d at 313 (quoting *United States v. Davis,* 514 F.3d 596, 607 (6th Cir. 2008)).

**III.**

**A.**

Police may effect a stop where they have probable cause to believe a person has committed a civil infraction. *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012). "Probable cause is generally defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Copeland*, 321 F.3d 582, 592 (6th Cir. 2003) (quoting *United States v. Ferguson,* 8 F.3d 385, 392 (6th Cir. 1993) (en banc)). Determining whether an officer had probable cause for a stop requires "an objective assessment of an officer's actions in light of the facts and circumstances then known to him." *Ferguson*, 8 F.3d at 388 (quoting *Scott v. United States*, 436 U.S. 128, 137 (1978)).

The district court held that Berdan and Kross had probable cause to stop Chambers for walking in the street where sidewalks are provided, a civil infraction under Michigan law. Mich. Comp. Laws Ann. § 257.655(1) ("Where sidewalks are provided, a pedestrian shall not walk upon the main traveled portion of the highway. Where sidewalks are not provided, pedestrians shall, when practicable, walk on the left side of the highway facing traffic which passes nearest."); *see also id.* § 257.655(2) (stating that violating this statute is a civil infraction). Berdan and Kross testified that they stopped Chambers because they observed him walking down the middle of the street, and that before doing so they looked around briefly to ensure the sidewalks were passable. Berdan also testified that, even when the sidewalks are unnavigable, such as during the winter when they have not been shoveled, he still stops pedestrians walking in the *middle* of the street. The district court noted that based on testimony and the photos the parties submitted, the sidewalks were likely passable, but held that even assuming they were not, the undisputed testimony demonstrated that Chambers was walking in the middle of the street— rather than on the side as required by the statute where sidewalks are not provided—and concluded that the troopers had probable cause to stop him for a civil infraction.

Chambers does not contest that he was walking in the middle of the street, or that there was a usable sidewalk "in the vicinity" where he was stopped. (*See* Chambers Br. 29, 33.) Rather, he argues that many areas of the sidewalk were in "serious disrepair," and he was unable to walk on the side of the street due to overgrown weeds and grass adjacent to vacant lots near where the troopers stopped him. (*Id.* 33-34.) Chambers contends that both troopers knew the condition of the sidewalks because they had patrolled the area before, and Berdan knew that people avoid lots with overgrown weeds because "they do not know what or who may be hiding in the tall grass." (*Id.* 33.) Thus, he contends, they did not have probable cause to stop him.

However, both troopers testified that they were unaware of the exact condition of the sidewalks prior to stopping Chambers, which is why they looked around. And, as the district court observed, although Berdan testified that he knew people did not like to walk near overgrown lots, he expressly disagreed that the weeds would require someone to walk in the middle of the street. Further, the district court found that based on the photos Chambers submitted, the tall grass was separated from the street by the sidewalk, and thus did not require Chambers to walk in the center of the street.

In sum, the record does not demonstrate that the district court's factual determinations are clearly erroneous or that the court erred in finding that the troopers had probable cause to stop Chambers for a civil infraction.

**B.**

Chambers next argues that he did not consent to the pat down or search.[2] Police may conduct a warrantless search "if valid consent to search is given." *Lucas*, 640 F.3d at 174. Where authority to search is based on consent, the government must establish "by a preponderance of the evidence, through clear and positive testimony, . . . that the consent was voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." *Id.* (alterations in original) (internal quotation marks omitted) (quoting *United States v. Canipe,* 569 F.3d 597, 602 (6th Cir. 2009)). This requires showing "more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968). In conducting this inquiry, the court considers the totality of the circumstances, including "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent;

---

[2] Both Chambers and the government use the terms "search" and "pat down" interchangeably, although in reality Berdan conducted a pat down.

whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999) (quoting *United States v. Riascos-Suarez*, 73 F.3d 616, 625 (6th Cir. 1996)); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). No one factor is determinative. *See Schneckloth*, 412 U.S. at 226-27. Whether consent is valid is a question of fact reviewed for clear error. *United States v. Lee*, 793 F.3d 680, 684 (6th Cir. 2015).

The district court concluded that Chambers' consent was valid because undisputed testimony established that when Berdan asked Chambers if he could pat him down, Chambers responded "Go ahead"; the entire interaction lasted only a few minutes; the troopers had not drawn their weapons or turned on their patrol lights; and although Chambers was not free to leave until the troopers decided whether to issue him a citation, Chambers had not been placed in handcuffs, nor had he expressed any desire to leave. Further, the district court considered that the troopers never threatened Chambers and made no "coercive promises" to induce his consent. (PID 255.) Finally, the district court observed that Chambers had prior experience with the criminal justice system.

Chambers contends that under the circumstances, his actions demonstrate that his consent was neither voluntary nor unequivocal. Chambers argues that by stating, "I don't have anything on me," he evinced a desire not to be searched, and the fact that he placed his hands on the police car without prompting shows he was merely acquiescing to the troopers' authority.[3] (Chambers

---

[3] To the extent Chambers relies on Berdan's testimony that Chambers' actions "led him to believe that [Chambers] was complying with his authority," (Chambers Br. 23), as evidence that his consent was not voluntary, the court does not find this argument persuasive. Berdan testified to this in response to a question from defense counsel; he was not testifying to a legal conclusion. *See Canipe*, 569 F.3d at 603 ("While defense counsel's use of the word 'acquiesced'

Br. 20-24.) However, Chambers expressly consented to the search by saying "Go ahead" in response to Berdan's request to pat him down. *See United States v. Cochrane*, 702 F.3d 334, 343 (6th Cir. 2012) (rejecting argument that consent was mere acquiescence to authority where "Defendant clearly conveyed his consent to the search by saying 'go ahead'"); *Canipe*, 569 F.3d at 600 (finding consent voluntary where the defendant said search "wouldn't be a problem"); *see also United States v. Frost*, 521 F. App'x 484, 486, 488 (6th Cir. 2013) (affirming that consent to search was voluntary where the defendant refused to sign consent form but "told the officers that they could 'search all that [they] want'"). Further, that Chambers placed his hands on the troopers' vehicle does not demonstrate that he was merely acquiescing to the troopers' lawful authority; rather, as the district court concluded, it could be viewed as further evidence of consent. *See United States v. Williams*, 754 F.2d 672, 675 (6th Cir. 1985) (finding relevant to whether consent was voluntary that the defendant "assisted in the search by unlocking [his] suitcase").

Chambers further argues that the circumstances under which he consented were coercive because the troopers were in full uniform with guns visible, he was not free to leave, the troopers did not inform him he could refuse the search, and Berdan testified that Chambers was "nervous but cooperative."[4] (Chambers Br. 21-26.) Although "indications of 'more subtle forms of coercion that might flaw [an individual's] judgment,'" are relevant to whether consent is voluntary, *see United States v. Beauchamp*, 659 F.3d 560, 572 (6th Cir. 2011) (quoting *United*

---

in his questioning of [the investigator] was an attempt to force a fact witness to adopt counsel's legal conclusion, such testimony was . . . unpersuasive.").

[4] Chambers also mentions that he has mental-health issues. However, the only record evidence Chambers cites is the magistrate judge's pretrial-release order, which states that as a condition of his release, Chambers must "submit to mental health evaluation and treatment, as deemed necessary by treatment professional." (PID 8.) There is no evidence that Chambers suffers from a mental illness that would render his consent involuntary.

*States v. Watson*, 423 U.S. 411, 424 (1976)), the district court did not clearly err in finding the circumstances here did not render Chambers' consent invalid. The presence of uniformed officers does not establish that Chambers' consent was coerced, especially where, as here, "the officers did not threaten or promise anything to [Chambers]; they had not yet arrested him or threatened to arrest him; and there is no evidence that the officers physically threatened [Chambers] or intimidated him." *Cochrane*, 702 F.3d at 343. Further, although the troopers did not inform Chambers of his right to refuse the search, "the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent," *Schneckloth*, 412 U.S. at 249, and, as the district court noted, Chambers had prior experience with the criminal justice system. *Cf. Canipe*, 569 F.3d at 604 (noting that defendant's prior experience with police and criminal justice system rendered it unlikely his statement of consent was mere acquiescence to authority).

To the extent Chambers argues the troopers had a *modus operandi* of stopping people and asking "permission" to search them even when they had no suspicion of criminal activity, the district court did not clearly err in finding the argument unsupported by the evidence, and this argument is not aided on appeal by the additional contention that police do this by exerting control through their voices and body language. (*See* Chambers Br. 25-26.)

Finally, Chambers' argument based on *United States v. Worley*, 193 F.3d at 380, is unpersuasive. In *Worley*, we upheld the district court's grant of Worley's motion to suppress based on the testimony presented and our conclusion that the district court's finding that Worley's consent was not voluntary was not clearly erroneous. *Id.* at 387. We did not hold that a finding of involuntariness was compelled. Here, the district court considered all the evidence and concluded that Chambers' consent was voluntary, a finding that is supported by the record.

Under these circumstances, the district court's determination that Chambers validly consented to the search is not clearly erroneous.

For these reasons, we **AFFIRM**.