**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0478n.06

**No. 16-3159**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Aug 16, 2017<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| TREMAINE D. COWAN, | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| Defendant-Appellant. | ) | OHIO |
| | ) | |
| | ) | |

BEFORE:    BOGGS, SILER, and MOORE, Circuit Judges.

BOGGS, Circuit Judge.  Perhaps the last thing one usually expects when exiting the bathroom is to find a police officer on the other side of the door.  However, such was the situation Tremaine Cowan discovered when he exited the restroom of a private home in February 2015.  The question of this case is whether, upon being asked by that officer if he would consent to a pat-down for the officer's safety, any agreement would be mere acquiescence rather than true consent.  The district court held that Cowan had consented to the officer's request.  Because Cowan had the opportunity to decline what the evidence describes as a cordial question and made no indication that he consented under protest or pressure, we affirm the district court's holding and its denial of Cowan's motion to suppress.

I

The police department of Wellsville, Ohio, serves the village's 3,500 residents with fewer than ten full-time officers and three part-time officers. On the night of February 22, 2015, the department received a phone call from Miranda Devore. She had been on the phone with her niece and had heard her niece's boyfriend, Gerard Bryant, in the background yelling before the call was suddenly ended. Given a history of domestic violence by Bryant against her niece, Devore asked the police to check on her at an address on Maple Avenue.

Patrolmen Steve Rodgers and Joseph Rayl were the only officers on duty and reported to the address, the home of Anita Kavanaugh and Bradley McKenzie. The home was known in the village as being connected with drug activity, and both patrolmen were familiar with the occupants. They were also aware that there was an arrest warrant out for Bryant, whom Rodgers knew from previous interactions. Upon arrival, Rayl went to the front door of the home and Rodgers went to the back door, in case Bryant fled in that direction. Rayl spoke to Kavanaugh, who said that Devore's niece had just left, and Rayl asked if the officers could search the house for Bryant. Kavanaugh agreed, and Rayl informed Rodgers of her consent before heading upstairs to look for Bryant.

Rodgers entered through the back door and looked around the kitchen for signs of Bryant. Seeing none, he went toward the stairs, where he saw McKenzie attempting to force open a door using a butter knife and speaking with someone inside the locked room. Rodgers asked McKenzie who was behind the door, but McKenzie did not respond, instead continuing his efforts to open the door. The door came open, and Tremaine Cowan emerged from what was revealed to be a bathroom. Cowan and Rodgers were about two feet apart in the space between the stairs and the bathroom. Rodgers did not recognize Cowan and testified at the suppression

hearing that he asked for his name, and Cowan gave it as Deon Johnson—in fact his brother's name. Rodgers further testified that he "asked [Cowan] if he could move to the side so that I could pat him down for officer safety." Cowan moved to the wall and put his hands against it so that Rodgers could pat him down. Again according to Rodgers, the conversation up to this point had been "cordial." But as Rodgers patted down Cowan, he felt what he believed to be a large wad of money and then a gun in Cowan's front pocket. Shouting "Gun," Rodgers pushed Cowan against the wall until Rayl could rush downstairs and disarm him. After Rayl took the loaded gun from Cowan's pocket, Cowan was handcuffed and brought to the police cruiser.

At the cruiser, Rodgers patted down Cowan again and took out his Ohio state identification card from his pocket. The ID revealed Cowan's true name along with his picture. Rodgers also seized a scale with cocaine, a cell phone, and $773 in cash. Rodgers called the Columbiana County Sheriff's Department and learned of an active warrant for Cowan's arrest and that he was a convicted felon. After Cowan was brought to the police station, he informed the police that he had another gun with him, which was then removed from his waistband and found to be loaded. He also revealed that he was carrying cocaine in his pants. The police then found two bags of crack cocaine on Cowan.

Cowan was charged in federal court with possessing a cocaine mixture of less than 28 grams with intent to distribute and with possession of two firearms after felony convictions. Following his indictment, Cowan moved to suppress "any and all evidence obtained in violation of the Fourth Amendment, including but not limited to firearms and other contraband." After an oral hearing at which Rodgers testified, the district court denied the motion to suppress, finding that Rodgers's testimony that he requested permission to pat down Cowan was credible and that Cowan had consented to the initial pat-down. After a premature appeal to this court, Cowan

proceeded to a jury trial, where he was found not guilty on the indictment count regarding cocaine and was convicted on the second count for "being a felon in possession of a firearm or ammunition, in violation of 18 U.S.C. § 922(g)(1)." Following another premature appeal, Cowan was sentenced to 78 months in prison and now appeals the denial of the motion to suppress on the ground that he did not consent to the search.

II

A. Standard of Review

We review a district court's suppression motion under a mixed standard, assessing the district court's findings of fact for clear error and its legal conclusions de novo. *United States v. Akridge*, 346 F.3d 618, 622 (6th Cir. 2003). When the district court has denied the motion to suppress, we review the evidence in the light most favorable to the government. *Ibid.* Moreover, if a defendant has not renewed his motion to suppress following trial testimony, we are precluded from considering that evidence in our review of the district court's denial, as the district court never had the initial opportunity to rule on it. *United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998); *see also United States v. Cooper*, 39 F. App'x 185, 192 (6th Cir. 2002). Finally, the question of consent is reviewed for clear error. *See United States v. Lee*, 793 F.3d 680, 684 (6th Cir. 2015).

B. Whether Cowan Consented or Acquiesced

With regard to the first pat-down, the stakes are high. The government has conceded that, absent consent, there was no reasonable suspicion to search Cowan. And despite the broad nature of the motion to suppress, Cowan has limited his arguments to attacking the alleged consent to the initial pat-down.

To provide some brief background, we observe that an officer may pat down "an armed and dangerous individual . . . [where] a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Of course, "a search authorized by consent is wholly valid," *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973), but a prosecutor bears "the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). Such burden "cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Id.* at 548–49. In *Bumper*, the police arrived at the petitioner's grandmother's home claiming to have a warrant to search the house. *Id.* at 546–47. The grandmother responded with, "Go ahead," and the officers found a rifle. *Id.* at 546. When the trial court held a hearing on the motion to suppress, the prosecutor disclaimed reliance on the alleged warrant, but stated instead that the grandmother had consented to the search. *Ibid.* The Court found that the woman had merely acquiesced to the officers "colorably lawful coercion," rather than provided consent. *Id.* at 550.

Given our limited view of the evidence in light of Cowan's failure to renew his motion to suppress, we will examine only those facts presented before the district court at the suppression hearing.[1] According to Rodgers, he and Cowan were engaged in "cordial" conversation. While Rodgers was in uniform, he repeatedly testified that he had merely asked Cowan if he would put his hands on the wall for a pat-down. This testimony was expressly found by the district court to be credible. "In reviewing the denial of a motion to suppress, 'we accord considerable deference

---

[1]Cowan alleges in his briefing that his situation was particularly intimidating, given that he was the only black man in the house with two white officers, and cites articles asserting a nationwide history of disproportionate police violence against black victims. Appellant's Br. 16. While he did make some reference to this argument in his testimony at trial, we are limited to the testimony raised before Cowan's motion was ruled upon and Cowan waived the argument by not raising it earlier. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1172 (6th Cir. 1996) ("Issues that are not squarely presented to the trial court are considered waived and may not be raised on appeal."). Thus, although the issue now raised may well be a serious one, it was unpreserved.

to the credibility findings of the trial court.'" *United States v. McCauley*, 548 F.3d 440, 447 (6th Cir. 2008) (quoting *United States v. Cooke*, 915 F.2d 250, 252 (6th Cir. 1990)).

The distinction between a question and command can be slippery. This court has found language that might be characterized as commands to be requests in the past. *See, e.g.*, *United States v. Campbell*, 486 F.3d 949, 956 (6th Cir. 2007) (holding that an officer's statement, "I'd like to see some ID," was a request); *United States v. Matthews*, 278 F.3d 560, 562 (6th Cir. 2002) (finding that an officer's yell to a defendant, "Hey, buddy, come here," was a "simple request[,] . . . which the defendant could have politely declined"), *abrogated on other grounds by Begay v. United States*, 553 U.S. 137 (2008). "[L]anguage or tone of voice indicating that compliance" is necessary can be indicative of a seizure. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). But here there was no testimony showing that the language used was coercive, merely Rodgers's assertion that "I asked him if he could move to the side so that I could pat him down" in a cordial manner. Because there is insufficient evidence to demonstrate that the district court clearly erred in finding these facts, we must accept them.

Moreover, the district court reviewed all of the evidence discussed in the dissent. The dissent highlights the four different ways that Rodgers described the encounter. The district court specifically noted each of the times that the officer consistently stated that he "asked" the defendant to be patted down. The court recognized that the officer's police report could be interpreted to the contrary, but found that the choice of language there did not "mean[] that consent was not given." Finally, the court specifically found that the officer was credible and concluded "that consent was given by the defendant for the search."

Of course a request by an officer does not mean that every affirmative response by a defendant is voluntary consent; on the contrary, if a reasonable person would have felt that he

were not free to walk away and ignore an officer's request, he is already seized. *See United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004). The facts of this case do not demonstrate, however, that Cowan was unable to decline the officer's request. True, Cowan had just emerged from the uncomfortable experience of being locked inside a bathroom to find a police officer standing two feet away. But proximity, while admittedly a factor, "is not the only one." *Florida v. Bostick*, 501 U.S. 429, 437 (1991). In *Bostick*, the Supreme Court found that an encounter between police officers in a bus aisle and seated passengers was not per se a seizure. 501 U.S. at 437. Rodgers, having obtained Kavanaugh's consent to enter, had as much right to be in her home as Cowan did. Much like the situation in *Immigration & Naturalization Service v. Delgado*, 466 U.S. 210 (1984), where INS agents had received permission from an employer to conduct a survey of employees at their workplace in search of illegal aliens, the only constraints on Cowan were a function of the fact that both he and law enforcement officers were authorized to be in the same space. Nothing from the record indicates that at that moment Cowan was compelled to comply and could not decline and either seek to be on his way or remain in Kavanaugh's home.

Finally, the Supreme Court's decision in *United States v. Drayton*, 536 U.S. 194 (2002), confirms our understanding of the situation here. There, much like *Bostick*, officers boarded a bus in Florida and began asking passengers if they could search their bags. The officers noticed two men wearing baggy clothing and asked one if he minded being searched. *Id.* at 198–99. The man consented, and officers patted him down, detected drug packages strapped to the man's thighs, and took him off the bus in handcuffs. *Id.* at 199. When they asked Drayton (in the adjacent seat) if they could pat him down ("Mind if I check you?"), Drayton "responded by lifting his hands." *Ibid.* When an officer patted down Drayton, he discovered Drayton had taped

bundles of cocaine to his thighs. *Ibid.* Drayton argued that he had been seized, but the Supreme Court held otherwise:

> The officers gave the passengers no reason to believe that they were required to answer the officers' questions. When Officer Lang approached respondents, he did not brandish a weapon or make any intimidating movements. He left the aisle free so that respondents could exit. He spoke to passengers one by one and in a polite, quiet voice. Nothing he said would suggest to a reasonable person that he or she was barred from leaving the bus or otherwise terminating the encounter.

*Id.* at 203–04. In those circumstances, even with his cotraveler led away before him, the Supreme Court found that Drayton had "no indication that he was required to consent to a search." *Id.* at 206. In this case, Rodgers did not brandish his weapon or make intimidating movements. Although he was in front of Cowan when he stepped out of the bathroom, there is no evidence that Rodgers blocked Cowan's path down the hallway. And Rodgers spoke to Cowan in a cordial manner. Therefore, the evidence does not suggest that Cowan was seized when he encountered Rodgers in Kavanaugh's home.

Cowan highlights Rodgers's statement that Cowan "was going to get patted down for officer safety" regardless. Fourth Amendment questions are examined objectively and an officer's subjective motivations are not enough to transform a permissible search into an impermissible one. *See Whren v. United States*, 517 U.S. 806, 813 (1996). We need not evaluate the hypothetical situation of what Rodgers might have done had Cowan not consented except insofar as it might inform our perception of what he actually did, and only then if those actions would be objectively unreasonable. But there is no evidence that Rodgers's conviction that Cowan would be searched in any event had any effect on his actions and thus it merits no further consideration.

Moving to the wall, even silently, demonstrates consent, and there was no indication that Cowan was acquiescing rather than consenting to Rodgers's request. While this court has found

in situations where a defendant has acquiesced no true consent was given, *see, e.g.*, *United States v. Worley*, 193 F.3d 380, 383 (6th Cir. 1999) (finding acquiescence rather than consent where a defendant responded to an officer's request to look in his bag with "[Y]ou've got the badge, I guess you can" (alteration in original)), it has also found that assuming the pat-down position can be evidence of consent. *United States v. Chambers*, 646 F. App'x 445, 448 (2016); *see also Drayton*, 536 U.S. at 199 (silently lifting hands was considered consent to a pat-down); *United States v. Wilson*, 895 F.2d 168, 172 (4th Cir. 1990) (per curiam) (raising one's arms at a request to pat down demonstrated nonverbal consent), *cited in United States v. Anderson*, 983 F.2d 1069, 1993 WL 2302, at \*7 (6th Cir. 1993) (unpublished table decision). We have also found that consent can be given without speaking a word. *See United States v. Ortiz*, 455 F. App'x 669, 671–72 (6th Cir. 2012) (holding that "stepping back, gesturing, and opening the door wider . . . unambiguously conveyed" assent to officers' request to enter). Because "the question of voluntariness pervades both the search and seizure inquiries, the respective analyses turn on very similar facts." *Drayton*, 536 U.S. at 206. Rodgers asked Cowan if he could pat him down and provided a reason (officer safety) why he sought to do so—something he need not have done if he were simply demanding compliance. Where a citizen "advise[s] the police of his or her wishes and . . . [the police] act in reliance on that understanding[,] . . . it dispels inferences of coercion." *Id.* at 207. Again, although the burden is the government's to demonstrate that "consent was voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion," the totality of the circumstances, given the available evidence, shows that Cowan responded to the officer's request without displaying concern or hesitance. *Chambers*, 646 F. App'x at 447 (quoting *United States v. Lucas*, 640 F.3d 168, 174 (6th Cir. 2011)).

It is certainly possible that another judge looking at the same evidence and testimony could come to a different conclusion regarding whether Rodgers had properly asked Cowan for his consent. But given our standard of review as outlined above, we must "consider[] the evidence 'in the light most likely to support the district court's decision.'" *United States v. Smith*, 263 F.3d 571, 581 (6th Cir. 2001) (citation omitted). And when we do so, there is no basis to reverse the district court's denial of the motion to suppress.

## III

Because the only evidence before us is the testimony presented at the suppression hearing by Rodgers—testimony the district court found credible—and Rodgers stated that Cowan consented to his request to move to the wall without objection or indication of protest, we hold that the facts above indicate that Cowan's consent to the pat-down was voluntary and **AFFIRM** the district court's denial of the motion to suppress.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** When Tremaine Cowan was finally freed by his friend from a locked bathroom in the friend's home, he found himself about two feet from, and face-to-face with, a uniformed, visibly armed police officer. After the officer "asked [Cowan] if he could move to the side so that [the officer] could pat him down for officer safety," Cowan said nothing and remained absolutely silent. The record does not indicate that Cowan ever nodded to the officer or made any hand gestures. Cowan instead moved to the side, raised his arms, and placed them against the wall. Cowan was immediately searched, and only then did the officer uncover the firearm that is the subject of Cowan's conviction. The majority concludes that the search of Cowan was lawful "[b]ecause Cowan had the opportunity to decline what the evidence describes as a cordial question and made no indication that he consented under protest or pressure." Maj. Op. at 1. I disagree. I do not believe that a reasonable person in Cowan's shoes would have felt free to terminate the encounter with the officer, and the majority's insistence that Cowan was required to indicate that he was consenting under pressure conflicts with the law. Therefore, I cannot conclude on the basis of this record that any consent by Cowan was unequivocally, specifically, and intelligently given.

**A.**

The majority rightly notes that "[w]e review a district court's suppression motion under a mixed standard, assessing the district court's findings of fact for clear error and its legal conclusions de novo." Maj. Op. at 4 (citing *United States v. Akridge*, 346 F.3d 618, 622 (6th Cir. 2003)). Because I find no clear error in the district court's factual or credibility determinations, my discussion is limited to only the district court's legal conclusion that Cowan consented to the search.

A police officer does not violate the Fourth Amendment when the officer conducts a search pursuant to free and voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *United States v. Beauchamp*, 659 F.3d 560 (6th Cir. 2011). "The government bears the burden of proving, through 'clear and positive testimony' that the consent to search was given voluntarily." *Beauchamp*, 659 F.3d at 571 (quoting *United States v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998)). We have held that "[c]onsent is voluntary when it is 'unequivocal, specific and intelligently given, uncontaminated by any duress or coercion.'" *Id.* (quoting *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008)). A court considering whether a defendant gave unequivocal, specific, and intelligent consent to a search must consider the totality of the circumstances. *Id.* at 571–72 (citing *Bustamonte*, 412 U.S. at 227). Although we have never held that a police officer is required to inform an individual of his right to refuse consent, "the absence of such a warning is considered in the totality of the circumstances analysis." *Id.* at 572. We have certainly never held, as the majority states today, that an individual is required to articulate to an officer that his consent is under protest or pressure.

**B.**

What exactly Officer Rodgers said to Cowan before conducting the pat-down is still not clear. Officer Rodgers presented the district court with four different versions of his statement to Cowan. In his first police report, Rodgers wrote, "Officer Rodgers *had* [Cowan] place his hands on the wall *so* he could be patted down for officer safety." R. 29 (Mot. Hr'g Tr. at 6) (Page ID #217) (emphasis added). During a preliminary hearing approximately one week later, Rodgers said, "I *asked* him to move over and I *asked* him if I could pat him down for my safety." *Id.* (emphasis added). Before the grand jury, Rodgers said "I *asked* him if he would move over to the side of the dining room area *so* I could pat him down for weapons for our safety." *Id.*

(emphasis added). Finally, in his second police report, Rodgers states, "I, Patrolman Rodgers, then *asked* [Cowan] to place his hands on the wall *so* I could pat him down for officer safety." *Id.* at Page ID #217–18 (emphasis added). I believe that only one of Rodgers's four alleged statements, that he "asked him if I could pat him down" constitutes a request. The other three statements are commands because each communicates to Cowan that he *will* be patted down and that he must step to the side and place his hands on the wall. The district court ultimately concluded that Rodgers "asked the defendant to move over to the side and put his hands on the wall for a pat-down for officer safety." R. 29 (Mot. Hr'g Tr. at 5) (Page ID #216). I conclude that based on the district court's factual finding, Rodgers's "ask" was only *that* Cowan move to the side, and not *whether* Cowan would consent to a pat-down of his person.

The majority cites *United States v. Campbell*, 486 F.3d, 949, 956 (6th Cir. 2007), and *United States v. Matthews*, 278 F.3d 560, 562 (6th Cir. 2002), *abrogated on other grounds by Begay v. United States*, 553 U.S. 137 (2008), for the proposition that "[t]his court has found language that might be characterized as commands to be requests [that an individual is free to decline] in the past." Maj. Op. at 5. In *Campbell*, we held that an officer's statement that "I'd like to see some ID" to a person standing outside in a public parking lot was merely a request and that a "reasonable person would feel free to decline . . ." *Campbell*, 486 F.3d at 956. Similarly in *Matthews*, we held that a reasonable person walking down a street would feel free to ignore a police officer yelling "[h]ey, buddy, come here" through the officer's police-cruiser window. *Matthews*, 278 F.3d at 562. The majority therefore reasons that Officer Rodgers saying to Cowan, "I asked him if he could move to the side so that I could pat him down" was similarly a request. I disagree, and believe that the majority gives short shrift to the totality of the circumstances that distinguish this case from both *Matthews* and *Campbell*: (1) both

*Matthews* and *Campbell* involve interactions between individuals and police officers in public places of the defendant's choosing; (2) in *Matthews*, the officer yelled at the defendant while the defendant walked down a public street and while the officer was still inside of the officer's police cruiser; (3) the officer in *Campbell* spoke to the defendant in a public outdoor parking lot; and (4) the officer in *Campbell* requested the defendant's identification only after the officer and the defendant had engaged in a detailed and cordial conversation. *See Matthews*, 278 F.3d at 561; *Campbell*, 486 F.3d at 952. Here, Cowan encountered Officer Rodgers only after he was freed by his friend from a locked bathroom and found himself confined to a small space between the officer, the bathroom door, and the stairs. Unlike the defendants in *Matthews* and *Campbell*, who encountered police officers in public settings, Cowan was inside of a private residence, a mere two feet from the officer. Further, Officer Rodgers's statement that he wanted to pat Cowan down came immediately after asking Cowan his name, and not after a prolonged conversation. The circumstances of this case readily distinguish it from *Matthews* and *Campbell*. While I would not disturb the district court's factual finding that the interaction between Officer Rodgers and Cowan was cordial[1], I would find that the Officer's statement that he wanted to pat Cowan down coupled with both the circumstances surrounding Cowan's appearance from the bathroom and the close proximity of Officer Rodgers to Cowan compel a finding that a reasonable person would not have felt that he could freely walk away and decline the officer's request.

The majority also relies on *United States v. Drayton*, 536 U.S. 194, 199 (2002), because the Supreme Court in *Drayton* held that an individual who responded to the question "Mind if I check you?" by lifting his hands consented to a search. Maj. Op. at 7. That is not the situation in

---

[1]Importantly, the district court noted that Officer Rodgers "did raise his voice" during the interaction. R. 29 (Mot. Hr'g Tr. at 5) (Page ID #216).

this case. The district court did not conclude that Rodgers asked Cowan *if* he could conduct a search, but rather "he asked him to move and then gave an explanation as to why he was making this request." R. 29 (Mot. Hr'g Tr. at 5) (Page ID #216). This is not a semantic difference. The difference between asking in the first instance whether an individual consents to a search and asking whether an individual can take an action that will facilitate a search is the difference between a request that can be freely declined and a command that cannot.

## C.

Finally, I disagree with the majority that Cowan's decision to place his hands on the wall constituted some sort of silent and unequivocal consent. Citing our recent decision in *United States v. Chambers*, 646 F. App'x 445, 448 (6th Cir. 2016), the majority concludes that "assuming the pat-down position can be evidence of consent." Maj. Op. at 8–9. What the majority fails to recognize is that the defendant in *Chambers* gave clear *verbal* consent to the search in addition to placing his arms on the police vehicle for a pat-down. Before ever being patted down or assuming the pat-down position, Chambers responded to an officer's question whether he "would mind if [the officer] patted him down for weapons and/or drugs" by saying "[g]o ahead." *Chambers*, 646 F. App'x at 445–46. Only after giving verbal consent did Chambers walk to the officer's police cruiser and assume the pat-down position. While we concluded that Chambers placing his arms on the police vehicle "could be viewed as further evidence of consent," our conclusion that Chambers expressly consented to the search was based solely on his verbal response of "[g]o ahead." *Chambers*, 646 F. App'x at 448. The only other case the majority relies on for its proposition that consent may be unequivocally, specifically, and intelligently given through silence is *Drayton*, 536 U.S. at 199. But because the defendant in *Drayton* was directly asked if he consented to the search, that case is distinguishable. I further

-15-

conclude that the majority's reliance on *United States v. Ortiz*, 455 F. App'x 669, 671–72 (6th Cir. 2012), for the proposition that "[w]e have also found that consent can be given without speaking a word," is misplaced. Maj. Op. at 9. We found consent in *Ortiz* only because upon answering the door, the defendant "responded by stepping back, gesturing, and opening the door wider." *Ortiz*, 455 F. App'x at 671. The defendant in *Ortiz* acted affirmatively by gesturing to the officers and widening the door entryway. Cowan took no such affirmative steps. Cowan did not gesture, nod, clear a path, or otherwise affirmatively consent to the Officer's search. Instead, Cowan simply placed his hands on the wall.

I cannot accept the majority's characterization of Cowan's encounter with Officer Rodgers as being one in which a reasonable person would have felt free to leave. I believe that the circumstances suggest otherwise. I likewise cannot conclude on this record that Cowan's decision to place his hands on the wall in response to Rodgers's words constituted silent and unequivocal consent. I would therefore suppress the seizure of the firearm and thus **REVERSE** the judgment of the district court.