KAREN NELSON MOORE, Circuit Judge,
dissenting. '
When Tremaine Cowan was finally freed by his friend from a locked bathroom in the friend’s home, he found himself about two feet from, and face-to-face with, a uniformed, visibly armed police officer. After the officer “asked [Cowan] if he could move to the side so that [the officer] could pat him down for officer safety,” Cowan said nothing and remained absolutely silent. The record does not indicate that Cowan ever nodded to the officer or made any hand gestures. Cowan instead moved to the side, raised his arms, and placed them against the wall. Cowan was immediately searched, and only then did the officer uncover the firearm that is the subject of Cowan’s conviction. The majority concludes that the search of Cowan was lawful “[b]ecause Cowan had the opportunity to decline what the evidence describes as a cordial question and made no indication that he consented under protest or pressure.” Maj. Op. at 520.1 disagree. I do not believe that a reasonable person in Co-wan’s shoes would have felt free to terminate the encounter with the officer, and the majority’s insistence that Cowan was required to indicate that he was consenting under pressure conflicts with the law. Therefore, I cannot conclude on the basis of this record that any consent by Cowan *526 was unequivocally, specifically, and intelligently given.
A.
The majority rightly notes that “[w]e review a district court’s suppression motion under a mixed standard, assessing the district court’s findings of fact for clear error and its legal conclusions de novo.” Maj. Op. at 522 (citing United States v. Akridge, 346 F.3d 618, 622 (6th Cir. 2003)). Because I find no clear error in the district court’s factual or credibility determinations, my discussion is limited to only the district court’s legal conclusion that Cowan consented to the search.
A police officer does not violate the Fourth Amendment when the officer conducts a search pursuant to free and voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); United States v. Beauchamp, 659 F.3d 560 (6th Cir. 2011). “The government bears the burden of proving, through ‘clear and positive testimony’ that the consent to search was given voluntarily.” Beauchamp, 659 F.3d at 571 (quoting United States v. Salvo, 133 F.3d 943, 953 (6th Cir. 1998)). We have held that “[consent is voluntary when it is ‘unequivocal, specific and intelligently given, uncontaminated by any duress or coercion.’” Id. (quoting United States v. Moon, 513 F.3d 527, 537 (6th Cir. 2008)). A court considering whether a defendant gave unequivocal, specific, and intelligent consent to a search must consider the totality of the circumstances. Id. at 571-72 (citing Bustamonte, 412 U.S. at 227, 93 S.Ct. 2041). Although we have never held that a police officer is required to inform an individual of his right to refuse consent, “the absence of such a warning is considered in the totality of the circumstances analysis.” Id. at 572. We have certainly never held, as the majority states today, that an individual is required to articulate to an officer that his consent is under protest or pressure.
B.
What exactly Officer Rodgers said to Cowan before conducting the pat-down is still not clear. Officer Rodgers presented the district court with four different versions of his statement to Cowan, In his first police report, Rodgers wrote, “Officer Rodgers had [Cowan] place his hands on the wall so he could be patted down for officer safety.” R. 29 (Mot, Hr’g Tr. at 6) (Page ID #217) (emphasis added). During a preliminary hearing approximately one week later, Rodgers said, “I asked him to move over and I asked him if I could pat him down for my safety.” Id. (emphasis added). Before the grand jury, Rodgers said “I asked him if he would move over to the side of the dining room area so I could pat him down for weapons for our safety.” Id. (emphasis added). Finally, in his second police report, Rodgers states, “I, Patrolman Rodgers, then asked [Cowan] to place his hands on the wall so I could pat him down for officer safety.” Id. at Page ID #217-18 (emphasis added). I believe that only one of Rodgers’s four alleged statements, that he “asked him if I could pat him down” constitutes a request. The other three statements are commands because each communicates to Cowan that he will be patted down and that he must step to the side and place his hands on the wall. The district court ultimately concluded that Rodgers “asked the defendant to move over to the side and put his hands on the wall for a pat-down for officer safety.” R. 29 (Mot. Hr’g Tr. at 5) (Page ID #216). I conclude that based on the district court’s factual finding, Rodgers’s “ask” was only that Cowan move to the side, and not whether Cowan would consent to a pat-down of his person.
*527 The majority cites United States v. Campbell, 486 F.3d 949, 956 (6th Cir. 2007), and United States v. Matthews, 278 F.3d 560, 562 (6th Cir. 2002), abrogated on other grounds by Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), for the proposition that “[t]his court has found language that might be characterized as commands to be requests [that an individual is free to decline] in the past.” Maj. Op. at 523. In Campbell, we held that an officer’s statement that “I’d like to see some ID” to a person standing outside in a public parking lot was merely a request and that a “reasonable person would feel free to decline ...” Campbell, 486 F.3d at 956. Similarly in Matthews, we held that a reasonable person walking down a street would feel free to ignore a police officer yelling “[h]ey, buddy, come here” through the officer’s police-cruiser window. Matthews, 278 F.3d at 562. The majority therefore reasons that Officer Rodgers saying to Cowan, “I asked him if he could move to the side so that I could pat him down” was similarly a request, I disagree, and believe that the majority gives short shrift to the totality of the circumstances that distinguish this case from both Matthews and Campbell-, (1) both Matthews and Campbell involve interactions between individuals and police officers in public places of the defendant’s choosing; (2) in Matthews, the officer yelled at the defendant while the defendant walked down a public street and while the officer was still inside of the officer’s police cruiser; (3) the officer in Campbell spoke to the defendant in a public outdoor parking lot; and (4) the officer in Campbell requested the defendant’s identification only after the officer and the defendant had engaged in a detailed and cordial conversation. See Matthews, 278 F.3d at 561; Campbell, 486 F.3d at 952. Here, Cowan encountered Officer Rodgers only after he was freed by his friend from a locked bathroom and found himself confined to a small space between the officer, the bathroom door, and the stairs. Unlike the defendants in Matthews and Campbell, who encountered police officers in public settings, Cowan was inside of a private residence, a mere two feet from the officer. Further, Officer Rodgers’s statement that he wanted to pat Cowan down came immediately after asking Cowan his ñame, and not after a prolonged conversation. The circumstances of this case readily distinguish it from Matthews and Campbell, While I would not disturb the district court’s factual finding that the interaction between Officer Rodgers and Cowan was cordial[1], I would find that the Officer’s statement that he wanted to pat Cowan down coupled with both the circumstances surrounding Cowan’s appearance from the bathroom and the close proximity of Officer Rodgers to Cowan compel a finding that a reasonable person would not have felt that he could freely walk away and decline the officer’s request.
The majority also relies on United States v. Drayton, 536 U.S. 194, 199, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002), because the Supreme Court in Drayton held that an individual who responded to the question “Mind if I check you?” by lifting his hands consented to a search. Maj. Op. at 524. That is not the situation in this case. The district court did not conclude that Rodgers asked Cowan if he could conduct a search, but rather “he asked him to move and then gave an explanation as to why he was making this request.” R. 29 (Mot. Hr’g Tr. at,5) (Page ID #216). This is not a semantic difference. The difference between asking in the first instance wheth *528 er an individual consents to a search and asking whether an individual can take an action that will facilitate a search is the difference between a request that can be freely declined and a command that cannot.
c.
Finally, I disagree with the majority that Cowan’s decision to place his hands on the wall constituted some sort of silent and unequivocal consent. Citing our recent decision in United States v. Chambers, 646 Fed.Appx. 445, 448 (6th Cir. 2016), the majority concludes that “assuming the pat-down position can be evidence of consent.” Maj. Op. at 524. What the majority fails to recognize is that the defendant in Chambers gave clear verbal consent to the search in addition to placing his arms on the police vehicle for a pat-down. Before ever being patted down or assuming the pat-down position, Chambers responded to an officer’s question whether he “would mind if [the officer] patted him down for weapons and/or drugs” by saying “[g]o ahead.” Chambers, 646 Fed.Appx. at 445-46. Only after giving verbal consent did Chambers walk to the officer’s police cruiser and assume the paydown position. While we concluded that Chambers placing his arms on the police vehicle “could be viewed as further evidence of consent,” our conclusion that Chambers expressly consented to the search was based solely on his verbal response of “[g]o ahead.” Chambers, 646 Fed.Appx. at 448. The only other case the majority relies on for its proposition that consent may be unequivocally, specifically, and intelligently given through silence is Drayton, 536 U.S. at 199, 122 S.Ct. 2105. But because the defendant in Drayton was directly asked if he- consented to the search, that case is distinguishable. I further conclude that the majority’s reliance on United States v. Ortiz, 455 Fed.Appx. 669, 671-72 (6th Cir. 2012), for the proposition that “[w]e have also found that consent can be given without speaking a word,” is misplaced. Maj. Op. at 525. We found consent in Ortiz only because upon answering the door, the defendant “responded by stepping back, gesturing, and opening the door wider.” Ortiz, 455 Fed.Appx. at 671. The defendant in Ortiz acted affirmatively by gesturing to the officers and widening the door entryway. Cowan took no such affirmative steps. Cowan did not gesture, nod, clear a path, or otherwise affirmatively consent to the Officer’s search. Instead, Cowan simply placed his hands on the wall.
I cannot accept the majority’s characterization of Cowan’s encounter with Officer Rodgers as being one in which a reasonable person would have felt free to leave. I believe that the circumstances suggest otherwise. I likewise cannot conclude on this record that Cowan’s decision to place his hands on the wall in response to Rodgers’s words constituted silent and unequivocal consent. I would therefore suppress the seizure of the firearm and thus REVERSE the judgment of the district court;

. Importantly, the district court noted that Officer Rodgers “did raise his voice” during the interaction. R. 29 (Mot. Hr’g Tr. at 5) (Page ID #216).